## STEVENSON v. DUNLAP.

### SAME v. SAME.

1. An administrator in this State of a deceased infant (whether the infant had her domicile here or not) cannot maintain an action in the courts of this State against the guardian of the deceased infant's estate, he having been appointed such guardian by the courts of another State while both he and the infant resided there, and being served in this case by publication while still resident there.

2. And as no action could be maintained against him, no attachment could issue against his property here; nor generally can a foreign guardian be proceeded against by attachment.

Before KERSHAW, J., Aiken, November, 1889.

The opinion states the case.

*Messrs. Croft & Chafee,* for appellant.

*Messrs. Henderson Bros.,* contra.

October 2, 1890.   The opinion of the court was delivered by Mr. JUSTICE McGOWAN.   It appears that during the year 1885, J. Z. Dunlap, formerly of Aiken County, in this State, being in failing health, removed to the State of Florida and settled in Bartow County of that State.   Soon after, in 1888, he died there, leaving a last will and testament, by the terms of which his father, the defendant, S. J. C. Dunlap, was appointed the testamentary guardian of his two infant children, viz., Marion Adele and Sue Crawford Dunlap, for each of whom as guardian he received the sum of $883.   After the death of J. Z. Dunlap, his widow, bringing with her the aforesaid two infant children, Marion Adele and Sue Crawford, returned to Aiken, in South Carolina, with no purpose, as alleged, of ever going back to Florida.   During the year 1888 both the children died minors and intestate, and a few months after the last of the family, the mother, also died.

Haviland Stevenson, the maternal uncle of the children, ad-

ministered upon their estates in South Carolina, and demanded
their funds in the hands of their grandfather, the defendant, S. J.
C. Dunlap, in the State of Florida, held by him as testamentary
guardian as aforesaid, for each $883; and that demand being
refused, the said administrator instituted two actions, one for each
child, in South Carolina, against the defendant, S. J. C. Dunlap,
in Florida, demanding judgment against him for the sum of $883
for each of the intestate children. The plaintiff made an affida-
vit stating the foregoing facts, and that the defendant "is justly
indebted to deponent in the sum of $883 in each case; this
amount of money being had and received by defendant in March,
1888, as guardian of the above named children, the said children
each having acquired said sum of money from the insurance on
the life of their father, J. Z. Dunlap, and deponent believes that
he is justly entitled to recover said sums as administrator as afore-
said; that the defendant is not a resident of this State, but has
property in the State, &c. That the said plaintiff has com-
menced an action by issuing the summons hereto annexed against
the defendant, S. J. C. Dunlap, upon the cause of action before
stated," &c. Upon this affidavit the plaintiff obtained a warrant
of attachment from the clerk of the court for Aiken County,
which was levied upon a tract of land and other property of the
defendant in this State.

A motion was made before Judge Kershaw to set aside and
vacate the attachment as illegally issued, which was granted;
and the plaintiff appeals to this court upon the following grounds:
"I. Because his honor erred in granting said order. II. Be-
cause from the pleadings and the affidavits and other papers used
at the hearing of the motions, it appears that the court had juris-
diction of the defendant and the subject of the action, and it was
error in his honor, the presiding judge, in not so deciding. III.
Because his honor erred in deciding that the defendant could not
be sued in South Carolina until there had been a judgment ob-
tained against him in the courts of the State of Florida."

If, in the most favorable view for the plaintiff, we assume that
his infant intestates had acquired a "domicile" in South Carolina
at the time of their death, his administration here must be re-
garded as the domiciliary and principal administration, to which

all foreign administrations, granted by reason of personal assets being found there, are merely auxiliary and in some sense a degree subordinate. This nature of the administration had at the domicile depends on the universally received doctrine that personal property follows the person of the owner. This rule of the international law looks to the power of control over movables under whatever land sovereignty they may chance to be placed. It may seem from this general doctrine that when the authority comes to be represented in the hands of a personal representative of a deceased owner, it would possess the same nature; but that authority does not exist to the same extent as it did in the owner while living, for the reason that the personal representative is bound either by the testamentary dispositions of his testator or by the law of distribution, which did not bind the decedent. The representative, of course, has no authority beyond the limits of the State under which he holds his appointment. "Each portion of the estate must be administered in the country in which possession is taken and held under lawful authority."

If, after the local purposes of the auxiliary administration have been fully accomplished, there should remain a residuum, it may be that such residuum would be transferred to be distributed according to the law of the domicile of the decedent. *Cureton* v. *Mills*, 13 S. C.. 418; *Dial* v. *Gary*, 14 *Id.*, 573; *Graveley* v. *Graveley*, 25 *Id.*, 14. It is true that in the case of *Cureton* v. *Mills*, the administrators in South Carolina were held to account for the proceeds of personal property, which, at the death of the intestate, was found in the State of North Carolina. But there the same persons were administrators in both States. They had the right to receive the personal property in North Carolina by virtue of their administration in that State, and thus being in legal possession, they transferred it to themselves as administrators in this State. So that we think it clear that the plaintiff, by virtue of his administration in South Carolina, had no jurisdiction of the subject of the action in Florida, and could not sue there.

But it is urged that this is really a South Carolina action, in which the defendant in Florida was made a party here by the process of attachment, publication, &c., and that the whole ques-

tion was thereby transferred to the courts of this State. This is ingenious, but we cannot think it sound. An attachment now, under the Code, is not an independent action, but only a provisional remedy in aid of an action, which in itself must be legally instituted as an indispensable prerequisite to obtain an attachment. Section 248 of the Code of Procedure allows an attachment only "whenever it shall appear by affidavit that a cause of action exists against such defendant." The question then recurs, did the plaintiff have legally instituted a South Carolina cause of action, perfect in every respect except making the defendant a party by attachment? In addition to what we have already said as to the limit upon the power of the administrator in this State in respect to assets in another State, the funds sought to be recovered were in the hands of the defendant living in Florida, as guardian or administrator, or possibly both,[1] under the laws of that State; and we think they were held in a representative capacity and were not subject to attachment. "It is the general rule that representative persons, such as heirs, executors, administrators, trustees, and others, claiming merely by right of representation, are not liable to be proceeded against as such by attachment." 1 Wait Act. & Def., 421. "Process by attachment will not lie against an absent executor or administrator." *Weyman, Ex'or,* v. *Murdock,* Harper, 126; *Young* v. *Young,* 2 Hill, 425; *Regenstein* v. *Pearlstein,* 30 S. C., 194.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER concurred.

MR. CHIEF JUSTICE SIMPSON. I concur in the result on the ground that the plaintiff had no cause of action against the defendant. See case of *Dial* v. *Gary,* 14 S. C., 573.

---

[1] The defendant states in his affidavit that he had been appointed administrator in Florida, but he does not mention the date of his appointment, nor say whether his appointment was made before or after the commencement of this action.—REPORTER.