### 10925

### STATE v. McCARY

(113 S. E. 275)

1. CRIMINAL LAW—RECORD OF TRIAL AND VERDICT IN MAGISTRATE'S COURT HELD ADMISSIBLE, ALTHOUGH DOCKET NOT INTRODUCED.— Where the magistrate in whose Court a case was tried died prior to commencement of action in the Circuit Court, and there was testimony from which it could be reasonably inferred that judgment was entered on a verdict rendered therein, the record of the trial and verdict was admissible, notwithstanding that the Magistrate's docket was not introduced in evidence.

2. MAGISTRATES—LIENS—JUDGMENT FOR PURCHASE MONEY OF PERSONAL PROPERTY CREATES NO LIEN.—A Magistrate's judgment for the purchase money of personal property without execution and levy thereunder, as required by Code Civ. Proc. 1912, § 97, Subd. 12, and Section 349, does not create a lien sustaining a conviction under Cr. Code 1912, § 446, for disposing of property subject to lien, though under Const. Art. 3, § 28, the property would not be exempt from levy on compliance with Civ. Code 1912, § 3718.

3. SALES—VENDOR HAS NO LIEN FOR PRICE.—A vendor has no lien for purchase money of personal property.

Before SEASE J., Saluda, Fall Term, 1921. Reversed.

R. P. McCary convicted of disposing of property under lien and appeals.

The exceptions referred to in the opinion are as follows:

(1) Because the Court erred in admitting in evidence the record of the trial and the verdict of the jury in case of *Corley v. McCary* before Magistrate Brunson when the docket of the Magistrate was not offered and was the highest and best evidence of what was done in Magistrate's

court, and the evidence was that the entry in the docket
differed from the record introduced.

(2) Because the Court erred in overruling the motion of
the defendant to direct a verdict of not guilty when State
rested its case for the reason that the State had failed to
prove that the horse alleged to have been disposed of was
under lien or mortgage and that the disposition complained
of did not come within the purview of Section 447—Crim-
inal Code of South Carolina. Likewise the Court erred in
again overruling the above motion when the same was re-
newed by defendant at the close of all the testimony.

(3) Because the Court erred in charging the jury as
follows:

"If you find that the defendant here knew of the lien
which attached from purchase money judgment, knew it
existed and aided and abated, knowingly disposed of it, he
is guilty under the law and you would write a verdict of
guilty. The error being that there was no "purchase money"
judgment in this case and even if there was a "purchase
money judgment" it would constitute no lien on personal
property till execution is levied.

(4) Because the Court erred in charging as follows:
"If he (the defendant) knew it had a purchase money
lien on it at the time and disposed of it that makes him
guilty," for the reason that it was misleading to the jury
because the law does not contemplate "purchase money
liens" in regard to personal property, the only preferential
treatment being accorded in this regard being the provision
to effect that a debtor cannot claim homestead exemption
in property as against "purchase money," see Sec. 3718,
Code 1912.

(5) Because the Court erred in charging as follows:
"The contention that the horse belonged to the son of the
defendant is precluded by that verdict (the verdict in the
Magistrate's Court) and that ends that controversy. I
charge you as a matter of law that the Court has decided

that the horse belonged to the defendant and not to his son," the error being that no such verdict or decision had ever been rendered or made and the charge of the Court was, therefore, erroneous, not founded in fact, was a charge on the facts, is not supported by the testimony and was prejudicial to the defendant.

(6) Because the Court erred in refusing to charge the second request of the defendant, to wit: "That no lien on personal property attached by virtue of a judgment until actual levy made," in that the said request was good law, pertinent to the issues in this case, and constituted a good defense for the defendant herein.

*Messrs. Able, Blease & Griffith,* for appellant, cite: *Magistrate's Docket best evidence*: 7 S. C. 224; 19 S. C. 601; 49 S. C. 419. *Levy necessary to create lien on personal property;* Code Proc. 1912, Sec. 349; 39 Cyc. 1904; 100 S. E. 210; 19 Mass. 206.

*Mr. T. C. Callison, Solicitor,* for the respondent. July 5, 1922.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted for disposing of property under lien, in violation of section 446 of the Criminal Code, which is as follows:

"Any person or persons who shall willfully and knowingly sell and convey any real or personal property on which any lien exists without first giving notice of such lien to the purchaser or purchasers of such real or personal property, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be imprisoned for a term not less than ten days nor more than three years, and be fined not less than ten dollars nor more than five thousand dollars, or either or both, in the discretion of the Court: Provided, that the penalties enumerated in this section shall

not apply to public officers in the discharge of their official duties: Provided, further, when the value of such property does not exceed twenty dollars, the punishment shall not exceed a fine of one hundred dollars, or imprisonment not exceeding thirty days."

The jury rendered a verdict of guilty, and the defendant was sentenced to six months' imprisonment, or a fine of $100.00. The defendant appealed upon exceptions which will be reported.

The following statement appears in the record:

"A. V. Corley, the prosecuting witness, testified that during the fall of the year 1920 the defendant, R. P. Mc-Cary, bought a horse from the witness, for which he agreed to pay $125.00, $25.00 in cash and $100.00 at a later date. No mortgage was given by McCary to Corley to secure the payment of the $100.00. Afterwards, in December, Corley brought suit against McCary to recover judgment for the $100.00. This case was tried before Magistrate Brunson at Edgefield, S. C. At the trial a verdict was rendered in favor of the plaintiff, Corley, in the following language: 'We find for the plaintiff $100.00, purchase money for horse. [Signed] E. S. Rieves, Foreman.' "

A. V. Corley testified substantially as follows:

"That the judgment in the Magistrate's Court at Edgefield was rendered, and in less than five days after judgment was rendered, and before expiration of time allowed to serve notice of intention to appeal, the horse disappeared from McCary's home in Edgefield, and was found by him in the possession of a Mr. Etheredge at Saluda, S. C., and when it was inquired of Etheredge as to how he came into possession of the horse, Etheredge stated that he had traded for it with R. P. McCary and his son. It was testified to and admitted by the prosecuting witness that there was no mortgage given for the balance due by McCary to

Corley for the $100.00 due on the horse, nor was there
any levy ever made on the horse or any attempt to make
a levy on the horse, by virtue of an execution issued on the
judgment rendered in the Magistrate's Court. It does not
appear that an execution was issued on the judgment.
Corley, the prosecuting witness, testified that as soon as
he found out that McCary had traded the horse, he came to
Saluda, saw Etheredge and learned that McCary had
traded the horse and found the horse in Etheredge's pos-
session. He brought a claim and delivery proceedings to
recover possession of the horse from Etheredge. Ether-
edge gave bond, and retained possession of the horse. This
claim and delivery proceeding was never brought to trial,
and Etheredge remained in possession of the horse."

At the conclusion of the testimony for the State, the
defendant made a motion for the direction of a verdict on
the ground that it had not been shown that there was a
valid subsisting lien on the horse, in that there was no
mortgage given by the defendant, and no levy had been
made under the execution issued upon the judgment. The
motion was overruled.

The defendant, R. P. McCary, then testified, in sub-
stance, as follows:

"That he bought the horse from the prosecuting witness,
Corley, some time in the fall of 1920, and agreed to pay
Corley $125.00 for same, of which $25.00 was paid in
cash, and the remainder was to be paid about April, 1921.
That no mortgage was given to secure the credit portion,
and after the witness carried the horse to his home, he
found it did not suit him for his own purposes and he sold
it to his son, J. O. McCary, who was unmarried and lived
in the house with his father, R. P. McCary, the defendant
in this case. That in December, 1920, Corley brought
suit against the witness for the $100.00 due. The case
was tried before Magistrate Brunson at Edgefield on Janu-

ary 13, 1921. At the trial the witness testified that he owed the $100.00, but had sold the horse to his son, and that his son was at that time the owner of the horse. At the trial judgment was rendered against the witness as defendant in the case for $100.00. No execution was ever levied upon the horse. After the judgment was rendered and within five days, this witness accompanied his son, J. O. McCary, to Saluda, where the horse bought of Corley, was traded to Etheredge."

J. O. McCary testified to the following effect:

"That he was the son of R. P. McCary; that he remembered the trial before Judge Brunson at Edgefield, S. C., and prior to this trial he had bought the horse that his father, R. P. McCary, got from Mr. Corley, prosecuting witness in this action, and that at the time of the trial at Edgefield, he was owner of the horse. That after the trial at Edgefield he came to Saluda and traded the horse to a Mr. Etheredge. That R. P. McCary, his father, came to Saluda with him to advise him and help him to make a trade with Mr. Etheredge. That the horse was never levied upon by virtue of an execution while it was in his possession, or the possession of his father."

His Honor, the presiding Judge, at the request of the defendant, thus charged the jury:

"Before the jury can convict on a charge of disposing of personal property under mortgage or other lien under Section 447 of the Criminal Code, they must find that the property that was disposed of was covered by a valid subsisting mortgage or other lien, at the time the disposition was effected."

He refused when requested by the defendant to charge the following:

"That no lien on personal property attaches by virtue of a judgment, until actual levy made."

The Circuit Judge also charged the jury as follows:

"I charge you that, notwithstanding the fact of the statement of the defendant that the horse belonged to his son, the question was thrashed out in the Edgefield Court, and every one thereafter was bound by it; when that jury said by its verdict in that case, 'We find for the plaintiff $100.00 purchase money for horse,' any controversy behind that is ended. In other words, the contention that the horse belonged to the son of the defendant, is precluded by the verdict, and that ends that controversy. I charge you as a matter of law that the Court has decided that the horse belonged to the defendant, and not to his son; and, if you find that he disposed of it, sold it, then you would write a verdict of guilty; if you find that he has not sold it, then you would write a verdict of not guilty. * * * I charge you, further, that the homestead law has one exception that is applicable to this case, and that is as to the purchase of a piece of personal property. If you get a judgment in the Magistrate's Court or any other Court, against personal property, that is a lien; he cannot homestead against that; that is a lien on the property to the extent of the judgment. * * * I charge you that the finding in this case tried at Edgefield, wherein the jury said, 'We find for the plaintiff $100.00 purchase money for horse,' and then and there actually a lien upon that horse and whoever disposed of it, knowing the lien existed, knowing of that verdict, would be guilty of violating Section 447, which I have read to you."

### OPINION

The first exception cannot be sustained. The Magistrate in whose Court the jury found a verdict against the defendant in the sum of $100 (the balance due as purchase money for the horse), died prior to the trial of the present case. There was testimony from

which it could reasonably be inferred that judgment was entered upon the verdict rendered in the Magistrate's Court.

.2   The main question, however, is whether the judgment entered upon the said verdict created a lien on the horse, without the issuing and levying of an execution to enforce its payment,

Subdivision 12 Section 97, of the Code of Civil Procedure, provided:

"Execution may be issued on a judgment heretofore or hereafter rendered in Magistrate's Courts at any time after the rendering of such judgment and within three years after the rendition thereof, and shall be returnable sixty days from date of the same, but no sale thereunder shall be made until after the time for appealing has expired, nor pending such appeal."

Section 349 of the Code of Civil Procedure provides:

"Executions shall not bind the personal property of their debtor, but personal property shall only be bound by actual attachment or levy thereon for the period of four months from the date of such levy. When judgment shall have been rendered in a Court of a Magistrate or other inferior Court, * * * the application for leave to issue execution must be to the Circuit Court of the county where the judgment was rendered."

There is no provision in the Code (whether applicable to Courts of original or limited jurisdiction) to the effect that the mere entry of a judgment creates a lien on personal property. In order to create such lien, it is a prerequisite that an execution should be issued and a levy made thereunder. Prior to the adoption of the Code, a judgment was not a lien on personal property. In order to create a lien on personal property, it was necessary to issue an execution and lodge it with the Sheriff. *Warren v. Jones,* 9 S. C. 288.

The quotation hereinbefore made, from Section 349 of the Code, shows that the procedure prevailing prior to the adoption of the Code has been changed, and that it is now necessary to issue and levy the execution in order to create a lien.

It is true Section 28, Art. 3, of the Constitution, provided that no property shall be exempt from attachment, levy or sale, for payment of obligations, contracted for the purchase of the homestead or personal property exemption, but that does not sustain the proposition that a judgment for the purchase money of an article of personal property creates a lien without the issue and levy of an execution, or without compliance with the requirements of Section 3718 of Code of Laws 1912, which is as follows:

"The exceptions contained in the preceding sections of this chapter shall not extend to an attachment, levy or sale in any mesne or final process to secure or enforce the payment either of taxes or of obligations contracted for the purchase of said homestead, or the erection or making of improvements or repairs thereon, or for the purchase of said personal property: Provided, the Court of authority issuing said process, shall certify thereon that the same is issued for some one or more of said purposes and no other."

Furthermore, there is testimony to the effect that the defendant sold the horse to his son prior to the recovery of the said judgment, yet, under the charge of his Honor, the presiding Judge, the vendor had a lien on the horse even before the judgment was recovered. This was error, of course.

Reversed.