#### MERCHANTS NATIONAL BANK OF RICHMOND, VIRGINIA, *ET AL.* v. SOUTH CAROLINA TAX COMMISSION

(131 S. E., 142)

1. TAXATION—STATE HAS POWER TO ADOPT METHOD OF DETERMINING INHERITANCE TAX AS STATED.—State has power to determine nonresident's inheritance tax, by treating estate of decedent as an estate of resident decedent, using valuation of decedent's property subject to taxing laws as entire estate, and allowing as deductions

any debts owed within State, and then distributing according to terms of will of testator, calculating tax on net taxable shares of beneficiaries after making distributions and allowing personal exemptions of various beneficiaries.

2.  TAXATION—ACTS OF TAX COMMISSION ASSESSING INHERITANCE TAX MAY NOT BE PRONOUNCED INVALID AND SET ASIDE BY COURTS, UNLESS PATENT ABUSE OF DISCRETION.—Powers conferred on Tax Commission under provisions of Inheritance Tax Act approved February 23, 1922, should be exercised with circumspection, but, if acts of Commission do not amount to patent abuse of discretion, they may not be pronounced invalid and set aside by Courts.

3.  TAXATION—TAX COMMISSION HELD NOT TO HAVE VIOLATED PROVISIONS OF INHERITANCE TAX ACT IN DETERMINING TAX DUE ON NONRESIDENT'S ESTATE.—Tax Commission, in determining amount of inheritance tax due on nonresident's estate, *held* not to have violated any of provisions of Inheritance Tax Act by its method of assessing tax, not deducting proportionate amount of debts and making no allowance for costs of administration, particularly in view of Section 12, providing that Commission should not be required to consider payments on account of debts or expenses of administration which have not been allowed by Courts having jurisdiction of estate.

4.  TAXATION—TAX COMMISSION MUST FOLLOW POLICY OUTLINED BY COURTS IN DETERMINING TAX DUE ON NONRESIDENT'S ESTATE, WHERE STATUTE IS SILENT ON SUBJECT.—Where Statute is silent on method of determining tax due on nonresident's estate, it is incumbent on Tax Commission to follow policy plainly outlined by decisions of their own Courts.

5.  TAXATION—ON APPEAL FROM DECISION OF TAX COMMISSION ASSESSING NONRESIDENT'S ESTATE, SUPREME COURT IS ONLY CONCERNED WITH WHETHER ACTS OF COMMISSION MAY BE PRONOUNCED INVALID AS MATTER OF LAW.—On appeal from decision of Tax Commission assessing inheritance tax on nonresident's estate, Supreme Court is only concerned with whether acts of Commission may be pronounced invalid as matter of law, regardless of whether methods adopted by Commission are the fairest and most equitable from standpoint of the interests of beneficiaries of estate.

Appeal from decision of South Carolina Tax Commission.   Affirmed.

Proceedings by the South Carolina Tax Commission to levy and assess an inheritance tax on certain assets of the estate of James H. Dooley, deceased.   From the assessment

the Merchants National Bank of Richmond, Virginia and another, as executors, appeal.

*Messrs. Page & Leary, Leake & Buford* and *Jas. M. Hurt, Jr.,* for appellants, cite: *S. C. Inheritance Tax Statute similar to statutes of other states:* 121 S. E., 478; Prentice-Hall Inheritance Tax Service 1924-1925; Gleason and Otis on Inheritance Taxation, 3rd Ed., 65 and 522; Commerce Clearing House Inheritance Tax Service (Introduction). *Inheritance tax an excise tax:* 121 S. E., 478; Gleason and Otis on Inheritance Taxation, 8 and 17; XXXII Stat. of S. C., Art. No. 478, Secs. 1, 5 and 12. *Deductions allowed nonresidents:* Inheritance Tax Service, (Introduction) 36; Gleason and Otis on Inheritance Taxation, 3rd Ed., 385; 124 N. Y. S., 676; 132 N. Y. S., 1143; 148 N. Y. S., 912; 157 N. Y. S., 378; 196 Mass., 533; 82 N. E., 700; 110 Kan., 153, 202 P., 53. *Marshalling assets of testate estate:* 144 N. Y., 6; 38 N. E., 961; 101 N. Y. S., 733; 268 Ill., 489; 109 N. E., 304. *Marshalling assets of intestate estates:* 190 N. Y., 492; 83 N. E., 584. *Same rule of marshalling assets applies to testate and intestate estates:* 79 N. J. L., 302; 75 Atl., 574; 110 Kan., 153; 202 P., 53; Inheritance Tax Service 44. *Assets distributed proportionately among beneficiaries:* 196 Mass., 533; 82 N. E., 700. *Statute of other State adopted, affected by Court decisions of such other State:* 121 S. E., 478. *Double taxation not favored:* 121 S. E., 478.

*Messrs. S. M. Wolfe, Attorney General* and *J. Fraser Lyon,* for respondent, cite: *No deductions for debts not to be paid out of assets within state:* 127 P., 1027. *Federal estate tax not deductible:* 178 App. Div., 836; 166 N. Y. S., 168; 179 App. Div., 497; 222 N. Y., 540; 112 Misc. (N. Y.), 168; 182 N. Y. S., 535; 113 Atl., 569; 175 N. W., 406; 169 Wis., 316; 169 Wis., 432. *No deduction to nonresident for inheritance tax paid in State of domicile:* 20 Misc. (N. Y.), 531; 46 N. Y. S., 906; 23 L. R. A., 852,

note. *Marshalling assets; New Jersey rule:*  132 N. W., 193; Ross on Inheritance Taxation, Sec. 176, page 235.

October 14, 1925. Petition for rehearing denied, January 15, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE JAMES W. JOHNSON.

The statement in the record is as follows:

"Appeal from decision of South Carolina Tax Commission, assessing an inheritance tax on certain assets of the estate of James H. Dooley, deceased.

"On November 16, 1922, James H. Dooley, a legal resident of the State of Virginia, died in the State of Virginia, leaving a last will and testament, which was duly probated in the Circuit Court of Nelson County, Va., and the Merchants' National Bank of Richmond, Va., and State & City Bank & Trust Company thereafter duly qualified, and are now acting as executors of the said estate. At the time of his death, the said decedent owned, among other personal property, the following property in South Carolina: Stock of South Carolina corporations of the value of $432,310.

"The executors of the said estate filed with the South Carolina Tax Commission, as required by the inheritance tax law of the State of South Carolina, an affidavit, setting out in said affidavit the above assets, and thereafter, on the 11th day of February, 1924, the South Carolina Tax Commission levied an inheritance tax or transfer tax on all of the above-mentioned assets of $27,785.62. The computation sheet showing the method used in arriving at said tax was as follows:

"  'Computed by G. E. T.

"  'South Carolina Tax Commission, Inheritance Tax Division (Nonresident Testate).

"          'COMPUTATION SHEET

"  'Will of Dooley, James H., late of Richmond, Va.

" 'Executor, Merchants' National Bank et al, Address, Richmond, Va.

" 'Attorney, Jos. M. Hurt, Jr., Address, 1111 East Main St., Richmond, Va.

" 'Date of qualification, November 26, 1922. Date tax due, November 26, 1923.

" 'PROPERTY AND SUMMARY OF DISTRIBUTION

| | |
|---|---|
| Personal estate | $432,310.00 |
| Total estate | 432,310.00 |
| Net estate | 432,310.00 |
| Personal exemptions | 16,000.00 |
| | |
| Net taxable estate | $416,310.00 |

| | | | | | |
|---|---|---|---|---|---|
| Amount tax @ | 1% | $ 200.00 | Tax 6% | | 1,200.00 |
| | 2% | 1,940.00 | 8% | | 3,200.00 |
| | 3% | 658.52 | 10% | | 7,000.00 |
| | 4% | 2,048.00 | 12% | | 11,539.10 |

" 'CERTIFICATIONS

" 'Date, February 11, 1924, Certificate No. 82. Amt., $27,785.62.' "

The method adopted by the South Carolina tax commission in distributing and apportioning the estate of decedent among the various legatees was as follows:

DISTRIBUTION UNDER WILL

| | |
|---|---|
| Josephine Houston | $ 20,000.00 |
| Florence Lewis | 20,000.00 |
| Alice E. Dooley | 20,000.00 |
| Sarah Dooley | 5,000.00 |
| Sarah Woodville | 10,000.00 |
| Coralie Lewis | 2,000.00 |
| Lavalette Keiley | 2,000.00 |
| Nora Houston | 2,000.00 |
| Florence E. Elder | 20,000.00 |
| May Elder | 2,000.00 |
| Grace Elder | 2,000.00 |

| | |
|---|---|
| Annie Elder .....................$ | 1,000.00 |
| Glenn Atkinson .................. | 2,000.00 |
| Emma Atkinson ................. | 2,000.00 |
| Lizzie Atkinson ................. | 2,000.00 |
| W. C. Bentley ................... | 1,000.00 |
| L. W. Talioferro ............... | 1,000.00 |

$114,000.00  specific

LEGACIES

| | | |
|---|---|---|
| Mrs. S. M. Dooley (widow) in all, after specific legacies ..........$ | 71,950.80 | life estate |
| St. Joseph's Academy .......... | 246,359.20 | remainder |
|     After life estate of S. M. Dooley .............. | | |

$432,310.00 total estate

$432,310.00 total property.
  114,000.00 specific legacies.

_____

$318,310.00 life estate in this sum to widow.

Actuaries' table—value of life estate at age 76, .22604. $318,310x.22604=$71,950.80, value of life estate to widow. $318,310—$71,950.80=$246,359.20, value of remainder.

The method adopted by the commission in assessing the tax to be paid by the estate of decedent was as follows: The commission treated the estate of decedent just as it would an estate of a resident decedent, using the valuation of decedent's property subject to the taxing laws of this State as the entire estate of the decedent.

The commission allowed as deductions any debts that decedent owed within this State, and then made distribution according to the terms of the will of testator. After this distribution was made, the personal exemptions allowed by law to the various beneficiaries were deducted, and the tax calculated on the net taxable shares of the beneficiaries.

There are two exceptions:

"(1) That the tax so assessed by the South Carolina Tax Commission is erroneous, in that in computing the tax there should first be deducted from the South Carolina assets such a proportionate amount of the debts of the estate, funeral expenses, the costs of administration, federal estate tax, and inheritance or transfer taxes paid to other states and foreign countries, as the South Carolina assets bear to the entire estate.

"(2) That the tax so assessed by the South Carolina Tax Commission is erroneous, in that the South Carolina assets are arbitrarily taxed to certain beneficiaries, whereas either the executors should be allowed to marshal the South Carolina assets at will, or else the South Carolina assets should be held to be distributed among all the beneficiaries in proportion to their interest in the estate, and the tax computed accordingly."

Section 1 of the Inheritance Tax Law of this State, approved February 23, 1922 (32 St. at Large, p. 800), contains the following provision:

"A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest thereon or income therefrom, in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, for the support of the State Government in the following cases. * * * When the transfer is by will or intestate laws of property within the State, and the decedent was a nonresident of the State at the time of his death."

The appeal raises two questions: (1) The deductibility of a proportionate amount of debts, costs of administration, etc. (2) The method of distributing the South Carolina assets among the beneficiaries under the will of testator.

Mr. Justice Marion, in delivering the opinion of the Court in the case of *Fuller v. S. C. Tax Commission,* 128 S. C., 14; 121 S. E., 478, says:

"The fundamental principle that the taxing power of a state is general and absolute, and, except as limited by particular provisions of the State and Federal Constitutions extends to all persons, property, and business within its jurisdiction, is well settled"—citing *Santee Mills v. Query,* 122 S. C., 158; 115 S. E., 202. *Shaffer v. Carter,* 252 U. S., 37; 40 St. Ct., 221; 64 L. Ed., 445.

Continuing, he says:

"As pointed out by Mr. Justice Pitney in the case last cited: 'Governmental jurisdiction in matters of taxation, as in the exercise of the judcial function, depends upon the power to enforce the mandate of the State by action taken within its borders, either *in personam* or *in rem,* according to the circumstances of the case, as by arrest of the person, seizure of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like; and the jurisdiction to act remains, even though all permissible measures be not resorted to.' "

In the case of *Plummer as Executor v. Colar, Comptroller of the City of New York,* 178 U. S., 117; 20 S. Ct., 830; 44 L. Ed., 999, the question presented to the Court for decision was:

"Whether, under the inheritance tax laws of a state, a tax may be validly imposed on a legacy consisting of United States bonds issued under a statute declaring them to be exempt from state taxation in any form."

The Court held in this case that such a tax was legal, basing its decision on the theory that the tax is not imposed on the bonds, but on the privilege accorded the owner of the bonds to inherit or receive property under the laws of the state.

The Court says further, in the *Plummer Case,* p. 133 (20 S. Ct., 836):

"In *Magoun v. Illinois Trust & Sav. Bank,* 170 U. S., 283; 18 S. Ct., 594; 42 L. Ed., 1037, the validity of the

inheritance tax law of Illinois was assailed because of inequalities and discriminations so great as to amount to a deprivation of property and to a denial of the equal protection of the laws.  *  *  *  This Court held that the law was one within the competency of the Legislature of the State to make, and that it did not conflict in any wise with the provisions of the Constitution of the United States.  *  *  *  Mr. Justice McKenna, who delivered the opinion of the Court, said:

"The constitutionality of the (inheritance) taxes has been declared, and the principles upon which they are based explained, in *United States v. Perkins,* 163 U. S., 625; 16 S. Ct., 1073; 41 L. Ed., 287.   *Strode v. Com.,* 52 Pa., 181;  *  *  *  *Re Merriam,* 141 N. Y., 479; 36 N. E., 505;  *  *  *  *Minot v. Winthrop,* 162 Mass., 113; 38 N. E., 512; 26 L. R. A., 259;  *  *  *  and in *Scholey v. Rew,* 23 Wall., 331; 23 L. Ed., 99.   It is not necessary to review these cases, or state at length the reasoning by which they are supported.   They are based on two principles:   (1) An inheritance tax is not one on property, but one on the succession.   (2) The right to take property by devise or descent is the creature of the law, and not a natural right— a privilege; and therefore the authority which confers it may impose conditions upon it.   From these principles it is deduced that the states may tax the privilege, discriminate between relatives and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective state constitutions requiring uniformity and equality of taxation."

This doctrine was quoted with approval in the case of *Maxwell v. Bugbee,* 250 U. S., 540; 40 S. Ct., 2; 63 L. Ed., 1124. In the case of *Blackstone v. Miller,* 188 U. S., 207; 23 S. Ct., 279; 47 L. Ed., 439, the Court says:

"The fact that two states, dealing each with its own law of succession, both of which the plaintiff in error has to

invoke for her rights, have taxed the right which they respectively confer, gives no cause for complaint."

The case of *Frick v. Commonwealth of Pennsylvania,* 45 S. Ct., 603; 69 L. Ed., 692, was a case involving the constitutional validity of a Pennsylvania statute imposing a tax on the transfer of property by will or intestate laws.   Henry C. Frick, a resident of the State of Pennsylvania, died testate, leaving a large estate.   He left real and personal property in Pennsylvania, and also tangible personalty having an actual situs in the State of New York.   The Pennsylvania statute provides that, where a person domiciled in that state dies owning property, real or personal, a tax shall be laid on the transfer whether the property be in that State or elsewhere.   The Pennsylvania tax authorities undertook to levy a transfer tax, not only on the Pennsylvania property of decedent, but also upon his tangible property having a situs in New York.   The question presented to the Court for decision was whether or not the attempt by the State of Pennsylvania to tax the transfer of tangible personal property having an actual situs in states other than Pennsylvania transcended the power of that state, and thereby contravened the due process of law clause of the Fourteenth Amendment to the Constitution of the United States.   The Court held that it did, basing its decision on the doctrine that a State could not tax property over which it had no jurisdiction.

This case, however, holds that, where a State creates a corporation, it has the power to impose a transfer tax and enforce it, irrespective of the domicile of the decedent and the actual situs of the stock certificates.   It holds, further, "that there was no error in refusing to make any deduction from the clear value on account of the estate tax imposed by the United States," and that the decisions of the Supreme Court of the United States show "that the power to regulate the transmission, administration, and distribution of tangible personal property on the death of the owner rests with

the State of its situs, and that the laws of other States have no bearing save as that State expressly or tacitly adopts them; their bearing then being attributable to such adoption, and not to any force of their own," citing many authorities in support of this doctrine.

It is true that the Court had under consideration in that case the levying of a tax on tangible personal property, but we think the same doctrine applicable to intangible personalty in cases where the State has jurisdiction, as in the case now under consideration.

In the light of these decisions from our Supreme Court, and from the Supreme Court of the United States, it is perfectly clear that the State had the power to adopt the method employed by the Tax Commission in assessing the tax and distributing the estate in this case.

The Legislature imposed upon the Commission the duty of determining the amount of all taxes due and payable under the provisions of the Inheritance Tax Act. Great powers were thus conferred on the Commission. These powers should be exercised with circumspection, and not in an arbitrary and unreasonable way. But, if the powers of the Commission do not amount to a patent abuse of discretion, the Acts of the Commission may not be pronounced invalid and set aside by the Courts.

We have read carefully the Inheritance Tax Act, and do not find that the Tax Commission has violated any of its provisions. On the contrary, there is one section of the Act, which we think strengthens the ruling of the Commission. Section 12 reads in part as follows:

"In the determination of the amount of any tax the said South Carolina Tax Commission shall not be required to consider any payments on account of debts or expenses of administration which have not been allowed by the Court having jurisdiction of the said estate."

What Courts are here referred to? Manifestly the

Courts of this State. Furthermore, the ruling of the Commission is in line with the policy of this State as announced in numerous decisions of our Supreme Court. In the case of *Hamilton v. Levy,* 41 S. C., 383; 19 S. E., 613, the Court says:

"In *Tucker v. Condy,* 10 Rich. Eq., 16, the Court held: 'It is a better, wiser, and safer rule to require that all the claims presented against the ancillary adminisration should be first satisfied before the fund is sent abroad to the primary administrator. When this is done, and every claim upon the ancillary administration is satisfied, comity steps in, and permits the general principle of international law to prevail, that in the disposition of personal property, the law of the proprietor's domicile shall govern.' The Circuit Judge has upheld this principle of law. To the same effect it will be found this Court held in the case of *Cureton v. Mills,* 13 S. C., 409 [36 Am. Rep., 700]."

And in the case of *Jones v. Jones,* 39 S. C., 256; 17 S. E., 591, we find the following:

"The administration in the foreign country is called auxiliary or ancillary, and the duty of such an administrator is to collect the assets of the estate, and pay the debts due by intestate, especially debts due to citizens of that country. Each country claims and exercises the right to see that debts due to its citizens are paid before the assets of the estate are taken out of its jurisdiction. After the debts are satisfied, the ancillary administrator, under the law of nations, resting upon comity and broad principles of justice, may transmit the residuum to the administrator of the domicile, to be there disposed of according to the law of the domicile"—citing Story, Confl. Laws, 851, § 514; also page 840, § 512; 1 Woer. Am. Law Adm., 375, § 167. *Tucker v. Condy,* 10 Rich. Eq., 12. *Cureton v. Mills,* 13 S. C., 430; 36 Am. Rep., 700. *Graveley v. Graveley,* 25 S. C., 2; 60 Am. Rep., 478; 3 Wms. Ex'rs, § 1664. *Dial v. Gary,* 14 S. C, 573;

37 Am. Rep., 737. *Stevenson v. Dunlap,* 33 S. C., 350; 11 S. E., 1017.

In *Graveley v. Graveley,* 25 S. C., 19, 20 (60 Am. Rep., 478), we find:

"There is certainly some want of clearness in the authorities as to the liabilities and duties of domiciliary and ancillary administrators, and the precise line of demarcation between them. For the sake of brevity, we may assume several propositions as settled. We take it as settled: (1) That, if a testator have personal property in a foreign country, the executor of the domicile has not the right, by virtue of the will alone, to go into that foreign country and possess himself of that property without new letters from the jurisdiction in which the property is found. *Dial v. Gary,* 14 S. C., 573 (37 Am. Rep., 737). (2) That the new administrator may, or may not, be the same person as the executor of the domicile. But whether or not, inasmuch as the law of the domicile must control in the succession or distribution of the effects, the administration granted there is deemed the principal or primary one, and that in the foreign country as ancillary, yet there is no privity between them, but they are independent of each other. 'Each portion of the estate must be administered in the country in which possession is taken and held under lawful authority.' 3 Wms. Ex'rs, § 1664. (3) That the only mode of reaching such assets is to require their transmission or distribution, after all the claims against the foreign administration have been duly ascertained or settled. 'The residue is transmissible to the home administration only when a final account has been settled in the proper tribunal where the new administration is granted, upon the equitable principles adopted by its own law in the application and distribution of the assets found there.' Story, Confl. Law, § 513; 3 Wms. Ex'rs, (6th Am. Ed.), 1664, and notes."

In *Dial v. Gary,* 14 S. C., 579; 37 Am. Rep., 737, we find:

"It is the duty of every government to protect its own citizens, and especially the rights of creditors, as the material and commercial prosperity of a country depends greatly on this protection and security. If a government fails in this, it fails in one of its most important functions and duties. To this end, therefore, it is well understood that the different governments in which the movable property of a deceased may be left, upon his death, are authorized to intervene and take control."

It is said in Gleason and Otis on Inheritance Taxation (3d Ed.) p. 522:

"While the various statutes differ widely as to rates, exemptions, the policy of taxing the personal property of nonresidents, they are all built on the same general plan, and are largely copied one from the other, with only minor difference of procedure."

We find that the method adopted by the several states imposing succession taxes on estates of nonresidents is by no means uniform. Five methods prevail, as follows: (1) Exemptions and deductions apportioned; (2) full exemptions allowed, local deductions only allowed; (3) full exemptions and a proportion of the deductions allowed; (4) prorating method of computing taxes used; (5) no exemptions or deductions allowed." (Prentice-Hall Inheritance Tax and Transfer Service.) In this case the Tax Commission used No. 2 above. This method has been adopted by the States of California, Colorado, South Dakota, Michigan, Texas and Connecticut, with the exception that in South Dakota no deduction is allowed for administration expenses, either local or otherwise.

That the method adopted by the Commission will, in some instances, work a hardship cannot be denied; but this might be said of any of the other methods by the different States of the Union. Our statute is silent on the subject, and it was incumbent on the South Carolina Tax Commission to follow the policy plainly outlined by the

decisions of our own Courts.  They have done this.  Exception 1 is overruled.

As to the appellants' second exception, which alleges error on the part of the South Carolina Tax Commission in distributing the South Carolina assets among all the beneficiaries in proportion to their interest in the entire estate, we have just held that the Commission commited no error in treating the assets in South Carolina, for the purpose of determining the tax, as a separate and independent estate, having no relationship to that outside of the State.

It logically follows that the entire assets, after paying debts and expenses due in this State, should have been applied to the satisfaction in full of the general legacies of equal priority.  But, aside from all this, this Court is only concerned with whether the acts of the Commission may be pronounced invalid as matter of law, regardless of whether the methods adopted by the Commission are the fairest and most equitable from the standpoint of the interests of the beneficiaries of the estate.

It would serve no good purpose to discuss the methods adopted by other States in distributing the assets of nonresident decedents.  They differ widely.  We are satisfied that the method adopted by the South Carolina Tax Commission may not soundly be pronounced erroneous as a matter of law.

The exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION concur.

MR. JUSTICE WATTS dissents.