13733

MAXWELL *ET AL.* v. GREENE

(172 S. E. 146)

*Mr. C. Birnie Johnson,* for appellant,

*Messrs. A. H. Ninestein* and *Edward H. Ninestein,* for respondent,

. December 9, 1933.

The opinion of the Court was delivered by Mr. Acting Associate Justice W. C. Cothran.

On October 11, 1928, the plaintiffs herein sold to one G. W. Greene certain furniture at the agreed price of $1,-625.65, upon which the said G. W. Greene paid all except $627.96. This amount was due when Greene died, on or

about January 30, 1931. His widow Inez Laval Greene, was duly appointed executrix of his estate, and on March 3, 1931, she filed suit to marshal the assets of the estate, which it appears was insolvent, and the winding up of the estate was in progress when this suit was brought.

On March 14, 1933, this suit was brought against Mrs. G. W. Greene, as administratrix of the estate of G. W. Greene. Just why she was sued as Mrs. G. W. Greene, as administratrix, when her representative capacity was Inez Laval Greene, as executrix, does not appear.

The action purports to be under the "purchase-money" statute (Section 546 of the Code) which permits an attachment of the property sold when the purchase price is not paid, although the wording of the complaint was more appropriate to an action in claim and delivery, especially as the record shows neither affidavit nor warrant of attachment. However, we will accept the pleadings as a suit for the unpaid purchase price with the assistance of an attachment, this being the construction evidently placed upon same by the attorneys and by the Circuit Court.

A motion was made to dissolve the attachment upon several grounds and was refused by the Circuit Judge, the only ground, as set forth in his order, being as follows: "I hold that the right to attach for the unpaid portion of the purchase money survives and that the death of the buyer did not affect the fixed rights of the parties; and that the action should be allowed to proceed to judgment."

From that order this appeal is taken, the exceptions fairly presenting the questions involved.

The real question raised by the appeal is whether or not an attachment will lie upon property belonging to an estate and then in the hands of an executor or administrator. It is well known that the purchase-money attachment proceeding is an addition to the old attachment law and that the method of procedure is the same.

In Shinn on Attachment and Garnishment, Vol. 1, § 83,

it is distinctly held that property in the hands of an executor or administrator is not subject to attachment, and refers to the case of *Weyman v. Murdock,* Harp, 125, as sustaining the rule. A quotation from this case is: "In (*McCoombe v. Dunch*), 2 Dall., 73 (1 L. Ed., 294), and (*Pringle v. Black's Ex'rs*), 2 Dall. 97 (1 L. Ed., 305), it is laid down that executors, administrators, and trustees, are not liable to the writ of attachment, as they all act in a representative capacity; and in this Court, in 1801, an attachment, which had been issued against an executor, was withdrawn, because the Court thought it would not lie; and from that day to the present time, there is no trace of an attachment against an executor, or administrator, to be found on the records of our Court. Besides, it would derange the whole course of administration, and marshalling of assets, if an attachment were permitted to bind, or take away the property of a deceased person out of the hands of an executor, or administrator, and prevent him from paying the debts of the testator or intestate, according to law. The attachment law is a proceeding *in rem,* agreeably to the civil law, unknown to the common law; and in all such newly created proceedings, the rule of law is, that they shall be carried on strictly within the letter of the law, and shall not be allowed any other or further powers by construction or intendment, than are expressly given by the Act creating them."

And, we may add, even "to the present time" the rule has not been changed. See, also, *Young v. Young,* 2 Hill, 425; *Stevenson v. Dunlap,* 33 S. Ct., 350, 11 S. E., 1017; *Regenstein v. Pearlstein,* 30 S. C., 192, 8 S. E., 850.

In addition to the above authorities, we may mention Section 8995 of the Code, pertaining to the payment of debts of deceased persons. Quite an array of authorities is set forth under the heading "Priorities," in the annotation under this section, the context reading: "The order of payment is determined as of the death of the testator."

We quote from only one of these cases, as follows, quoting the syllabus from *Tucker v. Condy,* 7 Rich. Eq., 281: "The assets of a deceased debtor are distributable among his creditors with reference to the rank of their demands at the time of his death; and this order will not be disturbed so as to give preference to the first creditor who obtains judgment against the executor."

The respondents seek to draw a parallel between this case and the case of attachments of automobiles in suits for damages based upon negligent operation. It must be borne in mind that the statute gives the plaintiff a lien upon the offending car, under the terms of the automobile statute, whereas the wording of the "purchase-money" statute allows the property to be held as security for the debt. Nor is there a lien under the latter statute until judgment is obtained, execution issued, and levy made. *State v. McCary,* 120 S. C., 361, 113 S. E., 275.

It appears from the foregoing authorities that the attachment could not lawfully issue in this case.

It is the judgment of this Court that the judgment of the Circuit Court, in refusing to dissolve the attachment, be, and the same is hereby, reversed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.