REGENSTEIN v. PEARLSTEIN.

1. In action to set aside a deed of assignment and for the appointment of a receiver, the proper Circuit Judge has jurisdiction at chambers to appoint a receiver of the assigned estate ; and an order of appointment so made must stand until vacated.

2. Simple contract creditors, without judgment, may maintain an action to set aside a deed of assignment for the benefit of creditors, whatever the ground may be upon which the action is based.

3. Upon a motion to appoint a receiver of an assigned estate, it is for the

Circuit Judge to determine the sufficiency in facts of the charges made against the assignee.

4. Where the complaint alleged that the assignee was insolvent, careless, negligent, and incompetent, and it was sworn to (even if not in such form, under the statute, as to require the answer to be verified), and there was another affidavit in support of these allegations—a rule to show cause served on the assignee and no return made—the Circuit Judge was justified in appointing a receiver.

5. Property of a debtor cannot be attached after it has been placed by the court in the hands of a receiver, for it is then in the custody of the law.

6. An order of the court putting the assets of an assigned estate in the hands of a receiver, operates to place such assets in the custody of the court; and therefore attachments thereafter levied on such property are inoperative and acquire no lien, although levied before the receiver had executed the required bond. *Clinkscales* v. *Pendleton Manufacturing Company*, 9 S. C., 318, recognized and followed.

7. Application for leave to file an answer after the time within which to do so has expired, is addressed to the discretion of the Circuit Judge—which was not abused in this case.

Before PRESSLEY, J., Orangeburg, January, 1888.

This was an action by J. Regenstein and J. C. Biesenthal, partners under the firm-name of J. Regenstein & Co., against Pearlstein & Karesh, W. H. Reedish, and others, commenced December 6, 1887. The complaint was verified by one of the attorneys for plaintiffs, and he swore that the complaint was "true to his own knowledge, except as to those matters stated on information and belief, and as to those matters he believes it to be true; that deponent's information is derived as follows :" [here stating the sources of his information] "that the reason this affidavit is not made by one of the plaintiffs is that neither of them is a resident of this State and county, which is the place of residence of the deponent."

The motion of the assignee to be allowed to file an answer was based upon the following affidavit:

"W. H. Reedish, of the county and State aforesaid, having duly sworn on oath, says: I. That he is one of the defendants in the above entitled action, and that he is desirous of answering the complaint therein, in order that he may have the opportunity

13—30

of vindicating himself against the many unfounded allegations respecting this defendant, which tend to injure his reputation for honesty and integrity.   II. That Messrs. Skinner & Williams, attorneys at law of the Barnwell bar, were requested by deponent to prepare the necessary and proper answer for deponent to said complaint, and to represent deponent in said action.   III. That said attorneys were furnished with a statement of the facts by this deponent, in order that they might represent this deponent advisedly and thoroughly.   IV. That this deponent fully believed that said attorneys would prepare and file his answer to the said complaint, as they had agreed to do, and rested easy, and was not aware that they had not arranged for the answer of the deponent until the time for answering had expired.   V. That deponent will suffer in his reputation if not allowed to answer and controvert the many serious and unfounded allegations made against him in the complaint and other proceedings had in said action. VI. That he submits with this affidavit a copy of his proposed answer, and prays that he may be allowed to file the same; and that he may be fully heard upon all the questions and issues raised thereby, as also upon all the matters and proceedings heretofore had in said cause."

The decree of the Circuit Judge was as follows :

Plaintiffs are creditors of Pearlstein & Karesh, and allege that on December 3, 1887, they made an assignment to defendant, Reedish, purporting to convey to him all their estate and effects for the benefit of their creditors, but that they had previously fraudulently removed and concealed the greater portion of their goods and merchandise, and kept the same concealed for their own benefit, and delivered to said assignee only a small portion of their estate.   They also allege that said assignee is financially irresponsible, negligent, and careless—incompetent to manage said assignment.   They pray that a receiver be appointed to take charge of said estate, and that the assignment may be adjudged fraudulent and void.   One clause of said assignment provides that, "*If there should not be enough to pay all the creditors in full, then no payment to be made to any creditor, except he, or they, accept the same in full satisfaction and discharge of their several demands.*"

On December 6, plaintiff's attorney moved before me for appointment of a receiver, and I granted a rule to show cause, to be heard eight days thereafter, meanwhile guarding against removal of any portion of said estate by a restraining order, and by directing the sheriff of said county to put a guard to watch places suspected to have parts of said estate concealed, and to prevent removal thereof. During that watch, and before the day for hearing the return to said rule, the guard captured portions of said goods, which were being removed in the night time, and discovered other portions concealed in an out-house, which they guarded until relieved.

The case came before me on December 14, on return to the rule—Pearlstein & Karesh failed to appear or make any return. The attorneys of the assignee opposed the appointment of a receiver. It was conceded that I had no jurisdiction at chambers, either to remove the assignee or to set aside the assignment. But there was abundant evidence before me to show that Pearlstein & Karesh had removed and concealed a large amount of merchandise which had not yet been discovered, and was in great danger of being lost to their creditors. The assignee had done nothing to save said merchandise; had not inquired about, or demanded it, nor did he at all assist the guard which had been appointed for that purpose. There was no reason to suppose that he had any previous knowledge of said frauds, but the manifest diminution in a short time of defendants' stock in trade should have put him upon inquiry. And I regarded him as careless and inefficient in such case. Considering, therefore, the manifest danger of loss to their creditors by the said fraudulent conduct of Pearlstein & Karesh, it was the imperative duty to appoint a receiver to take charge of said estate, to proceed immediately by all lawful means to obtain possession thereof.

The case of *Pelzer et al.* v. *Hughes et al.* was relied on to prevent this course, but this case differs from Pelzer *v.* Hughes in every material point. 1st. That case sought chiefly to take from possession of a purchaser property for which he claimed to have paid full consideration. 2nd. An answer had been filed therein, denying each and every allegation of the complaint; but in this case defendants have made default, no answer having been filed

by the defendants, either before or since the return to said rule.
3rd.   In that case there was no allegation or proof that the pro-
perty involved was in danger of being put beyond the reach of
the court; but in this case it was alleged and proved that defen-
dants had removed and concealed their property, and a portion
thereof had been discovered and captured by the officers of the
court before the return of the rule.    4th. In that case the defen-
dants were ordered on pain of contempt, to surrender the pro-
perty to the receiver.    The Appeal Court having decided that to
be error, no such order was asked for in this case.    The receiver
was only to attain possession of the property by such suits at law
as might be necessary.

An order was therefore made herein, appointing A. M. Salley
receiver, requiring him to execute bond with sureties, and author-
izing him to sue at law (if necessary) to attain possession of said
estate.    Subsequent to that order, and before said bond had been
executed, numerous creditors issued attachments, which were
levied on the merchandise in the hands of the assignee, and upon
further search by the sheriff, a large amount of merchandise was
found concealed under the roof above the ceiling of the store of
Pearlstein & Karesh.    Also bonds, notes, liens, and other choses
in action to amount five or six thousand, which had been covert-
ly placed by Pearlstein & Karesh, for their own use, in the hands
of J. M. Pearlstein, were surrendered by him, and are now in
the custody of the receiver.

Before the time for the hearing of this case on the merits, the
attaching creditors were served with notice.    They appeared at
the trial, and a consent order was signed, making them parties
to the case.    They dispute the validity of the order appointing a
receiver, and claim the property of defendants under said attach-
ments.    They rely on said case of *Pelzer* v. *Hughes*, and also
claim that plaintiffs in this case cannot maintain their action,
because they are not *judgment* creditors.    Under section 2016
of General Statutes, I hold that plaintiffs can maintain this ac-
tion, and consider that the Appeal Court, in allowing the case of
Pelzer *v.* Hughes to continue for trial on its merits, after they
set aside the order in the case, which appointed a receiver, have
reserved the question whether said section is not without limit,

so as to authorize any creditor, without judgment, to commence
action for setting aside an assignment in a case such as this.

It is ordered and adjudged, that said assignment be. set aside
as fraudulent and void, both because of the removal and conceal-
ment of a greater part of said estate, and because of the resulting
trust which remained in the assignors, by reason of the clause in
said assignment hereinbefore stated. Further ordered and ad-
judged, that the order of December 14th was valid, and placed the
said estate in the custody of this court, so that the attaching cre-
ditors have no lien upon the same. Plaintiffs have leave to move
the court at all times for such further orders as may be needful
to call in creditors and distribute said estate, and the receiver is
authorized and required, at request of plaintiffs' attorneys, to sue
for all property, real or personal, alleged to be part of said estate.

The assignee and the attaching creditors appealed upon several
grounds which raised the points stated in the opinion of this
court.

*Messrs. Izlar & Glaze* and *J. N. Nathans*, for appellant.

Under the facts as legally presented to the Circuit Judge on
December 14, 1887, he was not justified in appointing a receiver.
5 *Wait Act. & Def.*, 356; 3 *Pom. Eq. Jur.*, 358; 27 *S. C.*,
416; *Code*, § 265. There was no evidence to show that the
assignee was insolvent, careless, &c. The facts are not stated
positively, and this is necessary. 5 *Wait Act. & Def.*, 374; 1
*Woods*, 262.

A creditor without judgment can attack a voluntary assign-
ment only when void because of prohibited preferences. *Gen.
Stats.*, § 2016; 27 *S. C.*, 416. An assignee cannot be removed
unless shown to be guilty of some breach of trust. *Pom. Eq.
Jur.*, 361. A receiver may be appointed pending litigation, but
it should be cautiously done. 27 *S. C.*, 416. And he does not
become such until he has filed his security. 3 *Pom. Eq. Jur.*,
§ 1336, note 3. As against third persons, the appointment does
not relate back. Mr. High contends for a contrary rule under
New York cases. *High Rec.*, § 136. But he admits that it
is so in Maryland. This rule is found in *Farmers Bank* v.

*Bearton*, 7 Gill. & J., 428, and is consonant with principle and authority.

*Mr. L. T. Izlar*, contra.

The refusal of the Circuit Judge to permit the assignee to answer was a matter left to his discretion. *Code*, § 195 ; 2 *S. C.*, 393 ; 19 *Id.*, 588 ; 8 *Id.*, 63 ; 14 *Id.*, 228 ; 17 *Id.*, 453 ; 15 *Id.*, 614. The receiver could be appointed at chambers. 19 *S. C.*, 488. It was a proper case for a receiver. *Code*, § 265, ¶ 1 ; 3 *Johns. Ch.*, 48 ; 13 *S. C.*, 543. It was not necessary that the suing creditors should have a judgment. *Gen. Stat.*, § 2016. Qualification of receiver had relation back to the date of his appointment. *Beach Rec.*, § 200 ; 6 *Barb.*, 542 ; 9 *N. Y.*, 142 ; 4 *E. D. Smith*, 183 ; 5 *Sand.*, 612, 654 ; 5 *Abb.*, 542. In the receiver's hands, the goods could not be attached. 17 *How.*, 322 ; 4 *E. D. Smith*, 183 ; 1 *Keyes*, 203 ; *Drake Att.* (6th edit.), § 251.

*Mr. T. M. Raysor*, same side.

February 27, 1889. The opinion of the court was delivered by

MR. JUSTICE MCIVER. On December 3, 1887, the defendants, Pearlstein & Karesh, executed a deed of assignment, whereby they purported to assign all of their property to their co-defendant, W. H. Reedish, in trust for the payment of their debts. This deed provided, amongst other things, that the assignee should, after paying the expenses of the assignment, and all costs and charges incident to the due execution of its provisions, pay the claims of all such creditors of the assignors who shall accept the provisions of the assignment, and release the assignors ; and that if the assigned assets shall not yield a sufficient amount to pay all the creditors in full, "then no payment shall be made to any one of said creditors except he or they accept the same in full satisfaction and discharge" of all and singular their respective claims against the assignors. The assignee accepted the trusts created by this deed and received of the assigned assets, goods, wares, and merchandise to about the amount of one thousand dollars.

On December 6, 1887, this action was commenced by the plaintiffs, as simple contract creditors of the assignors, for themselves and such other creditors of said Pearlstein & Karesh as might come in, against Pearlstein & Karesh, W. H. Reedish, as their assignee, and the defendants, Augusta Karesh and Drusilla Baxter, to whom, it was alleged, the assignors had, very shortly before the execution of the assignment, delivered a large amount of goods, wares, and merchandise, for the purpose of concealing and removing them beyond the reach of their creditors, both of whom were privy to such fraudulent concealment and removal, and that said goods still remained in their possession. The complaint also alleged that the defendants, Pearlstein & Karesh, have no other property except that in the hands of the assignee, and that concealed and removed as aforesaid, out of which the plaintiffs can collect any part of their claim; and "that plaintiffs are informed and believe, and so allege, that W. H. Reedish is financially irresponsible, negligent, careless, and incompetent to manage an assigned estate of magnitude, and the plaintiffs are unwilling to trust their interest in his hands."

The prayer of the complaint is: 1st. That the said assignment be set aside as fraudulent and void. 2nd. That a receiver be appointed to take charge of the assets of Pearlstein & Karesh, sell the same, and after paying the costs and expenses of this action out of the proceeds of such sale, apply the remainder as he may be directed by the further orders of the court. 3rd. That the assignee account for the assets which have gone into his hands. 4th. That the defendants, Augusta Karesh and Drusilla Baxter, account for the property received by them or under their control. 5th. That the defendants be enjoined from disposing of any of the assets of said Pearlstein & Karesh.

On December 6, 1887, Judge Pressley, at chambers, on hearing the complaint, which was verified, and accompanying affidavit of W. L. Wood, in which deponent stated several circumstances tending to establish the allegations of the complaint as to the fraudulent concealment and removal of the goods, and that the assignee was making no effort to recover and save them for the creditors, granted an order enjoining the defendants from disposing of any of the assets of said Pearlstein & Karesh, and

requiring them to show cause before him, at chambers, on the 14th day of December, 1887, why a receiver should not be appointed, directing that a copy of such order, together with the complaint and accompanying affidavit, be forthwith served upon the defendants. In pursuance of this order copies of these papers were served on the defendants on the 7th and 8th of December, 1887.

On the day appointed for the return to the rule to show cause, the defendants appeared, by counsel we presume, and, without filing any return to the rule or submitting any counter affidavits, resisted the motion for appointment of a receiver, claiming that the assignee could only be removed after trial and clear proof of his default, and that the judge had no jurisdiction at chambers to try the case on its merits and adjudge the assignment invalid. His honor, recognizing his want of power to hear the case on its merits at chambers, to remove the assignee or to declare the assignment void, ruled as follows: "But I decide this motion under the general law of provisional remedies, which makes it the right and duty of this court to preserve the property of insolvent debtors pending litigation, whenever, either upon the law or the facts, the plaintiff shows a *prima facie* right to it, and there is danger of the property being put beyond the reach of the court." He therefore granted an order appointing A. M. Salley, who it seems was the sheriff of the county, receiver, requiring him to execute a bond, with sureties satisfactory to the clerk of the court, in the sum of ten thousand dollars, conditioned for the faithful performance of his duties as such receiver. On December 24, 1887, Mr. Salley duly qualified as receiver by executing the required bond.

In the meantime, however, on the 16th and 17th of December, 1887, certain of the creditors of Pearlstein & Karesh, viz., F. W. Wagener & Co. and others, commenced their actions against that firm, and on the same days caused warrants of attachment to be levied by the sheriff upon such of the property of Pearlstein & Karesh as could be found. On January 5, 1888, Judge Pressley made another order directing the receiver to retain in his hands, subject to the further order of the court, all the property of Pearlstein & Karesh which has come into his hands from any

source whatever, reserving all questions as the the rights of the attaching creditors. When the case came on for trial at the regular term of the court, an order was made, by consent, directing that the attaching creditors named therein "be admitted as parties defendants to the same, with all the rights of original parties thereto, with leave to be heard upon all issues and questions, orders and proceedings, heretofore had in said cause, as fully as if they had answered the complaint herein within the time prescribed by law, but without prejudice to them or either or any of them, by reason of lapse of time, in respect to any rights which they, or either or any of them, may have had, if originally made parties thereto. It is further ordered, that said cause do proceed to a hearing upon all questions, orders, and issues forthwith; and that they, the attaching creditors, have leave to file their answers to said complaint hereafter if they deem proper so to do;" but it does not appear that any such answers have yet been filed. At the same time the defendant, Reedish, whose time for answering had expired, submitted a motion, based upon an affidavit of his own, together with a copy of his proposed answer, for leave to answer, which motion was refused, when exception was duly taken.

The case then proceeded to trial on its merits, upon the testimony set out in the "Case," before Judge Pressley, who rendered judgment that the assignment be set aside as fraudulent and void, both because of the fraudulent removal and concealment of the greater part of the estate, just before the execution of the deed of assignment, and because of the provision in the deed hereinbefore mentioned, whereby the assignee was required to pay only the claims of such creditors as might accept and release, thereby raising a resulting trust in favor of the assignors : "that the order of 14th December, 1887, was valid, and placed the said estate in the custody of this court, so that the attaching creditors have no lien upon the same;" and that the plaintiffs have leave to move for such further orders as may be needful to call in creditors and distribute the proceeds of the assets, authorizing the receiver to sue for all property alleged to be part of the estate.

From this judgment the attaching creditors appeal, substantially upon the following grounds: 1st. Error in holding that the

order of 14th December, 1887, was valid, and placed the assets or Pearlstein & Karesh in the custody of the court, so that the attachments could not be levied thereon. 2nd. Error in appointing a receiver before plaintiffs had exhausted their legal remedies by obtaining judgment, and ineffectually endeavoring to enforce the same. 3rd. Error in holding that the order appointing the receiver could take effect before the bond was given. 4th. Error in finding that the assignee was careless and inefficient in the discharge of his duties.

The assignee, Reedish, also appeals upon three grounds: 1st. Error in refusing his motion for leave to answer after the time prescribed for that purpose had elapsed. The other two grounds presenting some of the same points raised by the appeal of the attaching creditors, need not be specified.

First, as to the validity of the order of December 14, 1887, appointing the receiver. It is not, and cannot be, denied that a judge at chambers has jurisdiction to make such an order, for the Code, section 265, expressly provides that "a receiver may be appointed by a judge of the Circuit Court, either in or out of court"; and it has been expressly so decided in *Kilgore* v. *Hair*, 19 S. C., 486. It is quite clear, therefore, that even if there was any error in making the order, it was not of a jurisdictional character; and hence the order could not be regarded as void, but simply erroneous for some other reason. It would seem, therefore, that until the order was ascertained to be erroneous by some proper proceeding, it was entitled to be respected and obeyed.

But waiving this, we will consider whether there was any error in granting the order. It seems to be assailed upon two grounds, first, because the plaintiffs had not recovered judgment and exhausted their legal remedies, which constitutes the second ground of appeal, and next, because it was granted without sufficient evidence. The first objection is disposed of by the express terms of the statute law of the State. Section 2016 of General Statutes provides that: "Whenever any debtor shall assign his or her property for the benefit of his or her creditors, it shall and may be lawful for any creditor, or creditors, of the said debtor, either by simple contract, specialty, or in any other manner, to institute

proceedings against the said debtor, or the assignee named in the assignment, or both, or any other persons properly parties thereto, either to attack and set aside the said deed of assignment, or to enforce the provisions thereof, or for any other purpose whatsoever, without first obtaining and entering up judgment against the said debtor upon the claim or demand so held by the said creditor, or creditors."

In view of this explicit language of the law-making power, we do not see how it can be doubted that a simple contract creditor can maintain an action to set aside an assignment on any ground whatsoever. We do not see how it can be contended that the privilege conferred upon a simple contract creditor by this section is confined to cases in which an assignment is assailed, upon the ground that it provides for preferences among creditors. There is nothing in the language used which would even imply that the privilege conferred was limited to such cases, and no such limitation can be placed upon it without interpolating words into the statute which the legislature did not see fit to use. On the contrary, the language employed is of the broadest character. *Whenever* a debtor makes an assignment for the benefit of his creditors, any simple contract creditor is authorized to institute proceedings to *attack* or *set it aside*, without any intimation that the attack must be based upon any particular ground, without first obtaining judgment upon his claim.

There is certainly nothing in the case of *Pelzer* v. *Hughes* (27 S. C., 408) to warrant the view that seems to be contended for by appellant. Besides the marked differences between that case and this, so clearly pointed out in the decree of the Circuit Judge, it will be seen from what is said by Mr. Justice McGowan, in delivering the opinion in that case, at page 414. that the "main object" and "real gravamen" of that action was to set aside the transfer of certain choses in action to a third person, who claimed the same as a *bona fide* purchaser for value, to which the provision of the section above quoted would not apply ; but in speaking of the section of the General Statutes above quoted, he says expressly : "So far as concerns a violation of that special act, the Circuit Judge undoubtedly had jurisdiction to consider the subject of appointing a receiver," although the fact that the

creditors had not obtained judgments, and, of course, had not exhausted their legal remedies, had just been mentioned immediately before using the language above quoted. He then goes on to consider the propriety of granting the order in that case, and holds that it was erroneous—not because the creditors had not previously exhausted their legal remedies, but because there was neither allegation nor proof of either breach of duty or insolvency on the part of the assignee, and hence no reason to apprehend either loss of, or injury to, the property pending the litigation. It is quite clear, therefore, that the case of *Pelzer* v. *Hughes* affords no support whatever for the position taken by appellants.

In this case, however, it was distinctly alleged that the assignee was not only insolvent, but also negligent, careless, and incompetent, and there certainly was some evidence to support these allegations, which the Circuit Judge thought was sufficient (and it was for him to judge of its sufficiency), and certainly the event has proved the wisdom of his conclusion, as, but for his prompt and decided action, a large portion of the assets might have been lost to the creditors. It may be true that the affidavit of the plaintiffs' attorney appended to the complaint was not, strictly speaking, such a verification of the complaint as would require all subsequent pleadings to be verified (*Hecht & Co.* v. *Friesleben*, 28 S. C., 181), but we see no reason why it might not be regarded as an affidavit, and this, with the affidavit of Wood, certainly furnished some evidence of the truth of these allegations ; and when the assignee failed to furnish any return whatever to the rule to show cause, based upon these allegations, and failed to submit any counter-affidavits, it seems to us that there was enough to justify the conclusion reached by the Circuit Judge.

The next inquiry is that presented by the third ground of appeal, whether there was error in holding that the order of December 14, 1887, took affect at its date, although the receiver did not give bond until the 24th day of that month, after the attachments had been issued and levied. This question does not seem to have been made the matter of distinct adjudication by the Circuit Judge, so far as his decree shows, but as he did

adjudge that this order placed the assets in the custody of the court, so that they could not be subjected to the lien of the.attachments by levy or otherwise, it becomes proper and necessary that we should consider the point raised by this ground of appeal. It does not seem to be questioned, and cannot well be, that property *in custodia legis* cannot be attached. *Drake on Attachment,* section 251. Nor can it be questioned that after a receiver of certain property has been duly appointed and qualified, an attachment cannot be levied upon such property, for it is then in the custody of the law. So that the precise question in this case is whether an attachment can be levied after the receiver has been appointed, and before he has executed the required bond.

It does seem, from the authorities cited by the respective counsel in this case, that elsewhere there is some conflict of opinion as to this question; but we think that the weight of authority, as well as reason, is.against the view contended for by appellants. Without going into these authorities, which are well presented in the several arguments submitted in this case, we think that the question is, in effect, concluded by a decision of this court. In *Clinkscales* v. *Pendleton Manufacturing Company* (9 S. C., 318) the plaintiff, as a stockholder in, and creditor of, the company, filed his complaint on April 20, 1876, for injunction against suing creditors, for the appointment of a receiver, sale of the property, calling in creditors, and for a final settlement of the affairs of the company, which was alleged to be hopelessly insolvent. On April 24, 1876, a receiver was appointed, who, however, did not give the required bond until June 6, 1876. In the meantime, to wit, on April 27, 1876, one of the creditors of the company obtained judgment against said company and issued execution on same day in an action which had been commenced in the District Court of the United States for the District of South Carolina on July 27, 1875, and the question was whether such judgment could be set up as a prior lien on the real estate of the company, and the court held that it could not, but that the plaintiff in such judgment must come in with all the other creditors on terms of equality, notwithstanding the fact that such judgment had been entered up before the receiver had given bond, but after the order of appointment.

In that case the court says : "It admits of no doubt that in an action of the present nature the order appointing a receiver, in itself, places the assets of the insolvent corporation in the hands of the court." And, again, it is said : "The company being insolvent, its property was held by its officers as a trust fund for creditors and stockholders. *Curran* v. *Arkansas*, 15 How., 304; 2 *Kent Com.*, 307. As such the Court of Equity had authority to lay hold of such trust fund and distribute it upon the principle of equity, respecting all legal liens that had attached to it before it came into the hands of the court. *Garvin* v. *Garvin*, 1 S. C., 55. A proper foundation for the exercise of such jurisdiction was laid down in the complaint, and the court, in making the order appointing the receiver, assumed control of the assets of the corporation. * * * Actual possession was not necessary to complete the right of the court to control them ; it was enough that the court had assumed control of them, and had entered upon their administration, protected them from waste, and devoted them, by anticipation, to certain uses, and they were, therefore, a fund in court as completely as if in the hands of a receiver."

If, as is said in that case, the order appointing a receiver, "*in itself*," places the assets in the hands of the court; and if the court, "*in making the order appointing the receiver*," assumed the control of the assets ; and if "*actual possession*" was not necessary to complete the right of the court to control the assets, but "it was enough that the court had assumed the control of them," and such assets were, therefore, "a fund in court as completely as if in the hands of a receiver," it follows necessarily that when the order of December 14, 1887, was made in this case, the assets were then placed in the hands of the court, as much so as if in the actual possession of a receiver, and hence no lien could be fixed upon such assets by the levy of the attachments subsequent to that date.

The point raised by the fourth ground of appeal has already been disposed of.

The appeal of the assignee presents, first, the question whether the Circuit Judge erred in refusing his motion for leave to file his answer after the time allowed for that purpose had expired.

As has beeen frequently held, such a motion is addressed to the discretion of the court below, and as we do not see the slightest reason for supposing that there was any abuse of such discretion in this case, it is quite clear that this appeal cannot be sustained. This appellant is not, therefore, entitled to be heard in this court upon the other grounds taken by him, which, however, present no additional question to those presented by the appeal of the attaching creditors ; and these have already been disposed of.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.