12067

HOLLIDAY *ET AL.* v. HEMINGWAY *ET AL.*
INTERNATIONAL HARVESTER CO. OF AMERICA v.
HEMINGWAY CO. *ET AL.*

(134 S. E., 530)

1. RECEIVERS—JUDGMENT RECOVERED IN FEDERAL COURT, AFTER APPOINTMENT OF RECEIVER FOR JUDGMENT DEBTOR IN STATE COURT, HELD NOT LIEN ON JUDGMENT DEBTOR'S LANDS ENTITLED TO PRIORITY IN RECEIVERSHIP PROCEEDING.—Judgment recovered against a defendant in Federal Court after appointment of receiver for such defendant in State Court, a transcript of which

NOTE.—*Right of creditor or person claiming lien on property in hands of receiver to attack validity of appointment, see 23 R. C. L., 44.*

was filed and entered in office of Clerk of Court in county where such defendant owned lands, *held* not a lien on such lands entitled to priority in receivership proceedings.

2. RECEIVERS.—Generally a judgment acquired after appointment of receiver cannot obtain lien on assets.

3. COURTS.—No court can interfere with custody of property held by another court through a receiver, but may establish by its judgment a debt against receivership, which must be recognized.

4. RECEIVERS.—It is not a prerequisite to valid appointment of receiver that all creditors of debtor be first made parties to proceeding.

Before HENRY, J., Williamsburg, May, 1925. Affirmed.

Receivership proceedings by J. W. Holliday and others against J. E. Hemingway and others, and six additional consolidated cases, wherein the International Harvester Company of America, a creditor, asserted a right to priority by reason of a judgment recovered in the Federal Court, which was opposed by the Bank of Georgetown, Trustee, and the Hartsville Fertilizer Company. From an order denying the Harvester Company priority, it appeals.

The following is the order denying the petition for priority, and the petitioner's exceptions thereto:

## "ORDER OF JUDGE HENRY

"In this proceeding the International Harvester Company, which was not a party to any of the seven constituent cases making up the present consolidated cause, petitions the Court for a decree adjudicating that the final decree heretofore rendered in this case be declared a consent decree, and that the provisions thereof be varied in the substantial particular of changing the course of distribution of the fund in Court by giving the petitioner's claim a priority as against a number of other claims admittedly not so entitled.

"The controversy in its essence relates to the distribution of a fund constituting the proceeds of sale of the property of Fidelity Land & Trust Company. In one of the seven constituent actions now consolidated, a receiver had been appointed for Fidelity Land & Trust Company, and the property of the corporation was administered by

such receiver throughout the proceedings in the present cause. Prior to the appointment of the receiver, an action had been begun by the petitioner against the Fidelity Land & Trust Company in the United States District Court for the Eastern District of South Carolina. The petitioner was served with a copy of the order appointing a receiver, and containing certain injunctive provisions, but, by agreement between counsel for the respective parties, the action in question was proceeded with, and resulted in the rendition of a judgment in favor of the petitioner and against the Fidelity Land & Trust Company.

"Various ineffectual proceedings, not material to relate here, were taken upon the judgment thus obtained. In the meanwhile, the seven actions in question, including the receivership case and several general creditors' bills, were consolidated, and, after the taking of considerable testimony, the holding of several references, and the making of various conflicting moves on the part of divers parties concerned, not including the petitioner, a decree was rendered, consented to by the counsel for all parties in the seven actions, providing for the sale of the real estate of Fidelity Land & Trust Company and the distribution of the proceeds of sale, in a fixed order, and to certain specified creditors.

"In all, the creditors involved in the present proceeding ar every numerous, with claims aggregating, it appears, over half a million dollars, but the final decree in question limited the distribution of the fund arising from the sale of the property of Fidelity Land & Trust Company to a small number of creditors, including the petitioner.

"Pursuant to the said final decree, the property of the corporation named was sold at public auction, and was bought in by a syndicate composed of several of the creditors named in the decree as entitled to the proceeds of the sale. The petitioner then for the first time asserted its claim to a lien upon the property in question, arising

from its aforesaid judgment, and attempted to levy an execution to enforce payment. Proceedings in this connection resulted in a hearing before the United States District Judge on a motion of the petitioner for an order directing the United States marshal to make the levy and sell thereunder. After hearing counsel for the parties, an order was passed refusing this relief, and relegating the petitioner to any relief that he might be entitled to in the State Court, but without adjudicating whether it was entitled to relief there.

"The petition now before the Court followed. It is to be noted that the present proceeding is not upon an original bill, nor upon a bill of reveiew. Nor does the petition filed allege or show any of the grounds upon which a final decree could be opened, vacated, or modified, even upon an original bill. There are no allegations of fraud, surprise, excusable neglect, or anything of that kind. On the contrary, the fact is that at all times the petitioner had full knowledge of the proceedings in question, and that, in the determination that it had rights to relief in the Federal Court, declined to become a party to the proceedings in the State Court.

"As set forth in 21 C. J., 706, 'there must, of course, be some point or stage in every Court procedure, legal or equitable, when the particular cause is finally disposed of, its thread cut, and the parties are out of Court,' and, if the end of the present complicated case has not been reached, certainly the petition now before the Court fails to show any cause of compaint on the part of the petitioner. Even a consent decree is a judicial decree, and, in the absence of some element of fraud, mistake, or other ground of complaint, cannot be set aside or attacked either by interlocutory petition, or by original bill or bill of review. 21 C. J., 816.

"Entirely aside from this insuperable obstacle, it appears from the proceedings that the petitioner is plainly estopped

at this late day from invoking equitable relief, even if it be assumed that relief in any event could be obtained upon a petition of the character now being considered. It appears from the papers before me that, with full notice of the proceedings, the petitioner's attorneys not only made no objection to the final decree rendered in this case, and took no steps to intervene to assert the claim now asserted, but actually attended the sale of the property now in question, and even at the sale gave no notice or expressed any intimation that they would contest the distribution of the proceeds of sale according to the terms of the decree upon which the sale was being made. It is common knowledge that, in receivership and other cases involving business disaster, creditors frequently unite for the purpose of buying in the property of their debtors, in the hope of liquidating the same in a manner that will reduce their losses, and that in so doing they are necessarily guided by the terms of the decree of sale with respect to the liens against the fund that will arise from it. That very thing happened in the present case, and, if the Court were now to disturb the priorities already established, it is apparent that the basis upon which the present owners of the property acquired the same will be subverted, and their lawful expectations destroyed, without any countervailing equity on the part of the petitioner who seeks to create that result.

"The respondents further rely upon the fundamental proposition that in no event could the judgment held by the petitioner be taken to be alien upon the property sold, and that therefore it cannot be entitled to priority in the distribution of the proceeds of sale. In support of this contention they rely upon the familiar rule that one of the necessary elements of a judgment, in order to render it a lien upon property of the debtor, is that it must be capable of collection by execution against the debtor's property. 34 C. J., 571. This is undoubtedly true, and in the very Court in which the judgment in question was ob-

tained it has already been ruled that an execution would not lie. This ruling is amply supported by the authorities. 4 Pom. Eq. (4th Ed.), 3729. It is, of course, quite possible for a judgment to be valid in all respects, as the judgment for the petitioner undoubtedly is, and yet not be entitled to the incidents of a lien. *Id.*

"The case of *Ex parte Spragins,* upon which the petitioner places much reliance, is clearly a case in which judgments were given effect as lien claims because the intervening assignment proceeding was declared by the Court to be fraudulent. The Court merely applied the familiar doctrine that, where a conveyance, whether in a judicial proceeding or otherwise, is declared void, the decree invalidates the transfer *ab initio,* and that in such case any intervening judgments take effect as if the transfer had never been made. Hence in the present case the petitioner would undoubtedly have some ground for its position if the final decree above referred to were set aside for fraud, mistake, or the like, but, so long as it stands, it is an insuperable obstacle to the maintenance of the present petition.

"It is, therefore, ordered, adjudged, and decreed that the petition be, and it hereby is, dismissed, with costs."

### "EXCEPTIONS

"You will please take notice that the petitioner, the International Harvester Company of America, excepts to the decretal order of Hon. J. K. Henry:

"(1) Because his Honor, in effect, held that, when the seven cases in the Court of Common Pleas for the County of Williamsburg, upon their consolidation by the order in January, 1924, had become a creditor's bill for the marshaling of the assets of the Fidelity Land & Trust Company, petitioner having come into the cause under the call for creditors and proven its claim against the Fidelity Land & Trust Company and the recovery of the judgment in the Federal Court and the filing of the transcripts of judgment

in the Counties of Williamsburg and Georgetown, was bound
by any decree or order giving preference to other parties
which had been passed in said causes before the call for
creditors had been issued and published, when he should
have held that the petitioner, International Harvester Com-
pany, was not bound by any such order which had been
passed in said causes before it became a party thereto by
the filing of the proof of its claim upon the call for creditors
being published.

"(2) Because he held as follows: 'As set forth in 21
C. J., 706, "there must, of course, be some point or stage
in every Court procedure, legal or equitable, when the par-
ticular cause is finally disposed of, its thread cut, and the
parties are out of Court," and, if the end of the present
complicated case has not been reached, certainly the petition
now before the Court fails to show any cause of com-
plaint on the part of the petitioner. Even a consent decree
is a judicial decree, and, in the absence of some element of
fraud, mistake, or other ground of complaint, cannot be set
aside or attacked either by interlocutory petition, or by
original bill or bill of review'—when said principle of law
is applicable only to parties to a cause, and his Honor should
have held when a call for creditors to present their claims
in a creditor's bill for the marshaling of assets is published
it opens the door to all persons, not previously parties to the
said cause, to come in and present their claims and estab-
lish their priorities, legal or otherwise, irrespective of and
unaffected by any previous orders giving preference to others
made in the cause while they were not parties thereto.

"(3) Because his Honor ruled that the petitioner was
estopped at this late day from invoking equitable relief, be-
cause it appeared that petitioner's attorneys, with full notice
of the proceedings, not only made no objection to the final
decree rendered in this cause and took no steps to assert
the claim now asserted, but actually attended the sale of
the property in question, and even at the sale gave no notice

nor expressed any intention that they would contest the distribution of the proceeds of sale according to the terms of the decree upon which the sale was being made, when he should have held that none of the said causes up to the consolidation thereof and the actual calling in of creditors of the Fidelity Land & Trust Company had been of the character of creditors' bills for the marshaling of the assets of the Fidelity Land & Trust Company, and that, until the calling in of creditors in that consolidated cause, the petitioner was not called upon to intervene and was not bound bv any proceedings therein, and should have held that the judgment of the petitioner had become a lien upon the real estate of the Fidelity Land & Trust Company in the Counties of Williamsburg and Georgetown, and that it was not bound in any way to take any steps with reference thereto until it had come into the consolidated cause upon the call for creditors.

(4) Because his Honor held, in effect, that the judgment recovered by the petitioner against the Fidelity Land & Trust Company in the federal Court had not become a lien upon the real estate of the Fidelity Land & Trust Company upon the filing of the transcripts thereof in the counties of Williamsburg and Georgetown.

"(5) Because his Honor held that the decree and orders passed in the seven consolidated cases, or any of them, prior to the petitioner becoming a party thereto upon the proof of its claim presented and made upon the published call for creditors, was an insuperable obstacle to the maintenance of the petition.

"(6) Because his Honor rules: 'The case of *Ex parte Spragins,* upon which the petitioner places such reliance, is clearly a case in which the judgments were given effect as lien claims because the intervening assignment proceeding was declared by the Court to be fraudulent. The Court merely applied the familiar doctrine that where a conveyance, whether in a judicial proceeding or otherwise, is de-

clared void, the decree invalidates the transfer *ab initio,* and that in such case any intervening judgments take effect as if the transfer had never been made. Hence in the present case the petitioner would undoubtedly have some ground for its position if the final decree above referred to were set aside for fraud, mistake, or the like, but, so long as it stands, it is an insuperable obstacle to the maintenance of the present petition'—when he should have ruled that the petitioner, not at the time being a party to any of the cause consolidated by the decree, and having previously recovered its judgment in the Federal Court and filed the transcripts provided by law to create a lien upon the real estate of the Fidelity Land & Trust Company, could not be affected by any order or decree then made in the consolidated causes, and should have granted the prayer of the petition."

*Messrs. Lyles & Lyles,* for appellant, cite: *What is creditor's bill:* 120 S. E., 371; 102 S. C., 154; 44 S. C., 65; 15 C. J., 1380 and 1413. *State Court without jurisdiction to enjoin suit in Federal Court where latter first acquired jurisdiction of cause:* 63 S. C., 542; 49 S. C., 224; 14 R. C. L., 419. *Consent decree treated as agreement of parties:* 30 S. C. Eq., 53; 8 S. C., 202; 11 S. C. Eq., 51; 21 C. J., 815; 138 U. S., 562; 34 L. Ed., 1005; 137 U. S., 48; 34 L. Ed., 614. *Receiver stands in shoes of debtor:* 120 S. E., 371; 118 S. E., 297; 44 S. E., 65; 34 Cyc., 184.

*Messrs. Spears & Want,* for respondents, cite: *Title of receiver relates to time of appointment:* 4 Pom. Eq. Jur., 4th Ed., 311. *Judgment of another Court having jurisdiction binding on Court appointing receiver; manner of paying judgment is question for Court appointing receiver:* 30 S. C., 192; 15 S. C., 518; 9 S. C., 318; 11 Rich. Eq., 23; 3 L. R. A., 634; 23 R. C. L., 129. *Essentials to creation of judgment lien on real property:* 40 S. C., 255; 60 F., 494; 23 L. R. A., 517; 34 C. J., 571; 4 Pom. Eq. Jur., 4th Ed., 3729. *Same; rule same where decree is by consent:* 9 S. C., 318; 8 S. C., 202; 11 Rich. Eq., 23; 21 C. J., 817.

September 15, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This appeal is taken by the International Harvester Company of America from an order of his Honor, Judge Henry, refusing to grant the prayer of the petitioner for priority in the distribution of the assets of the Fidelity Land & Trust Company, a corporation, whose assets are in the hands of the Court for distribution through a receiver.

Various proceedings were had in the Courts for several years prior to this appeal, rendering the whole matter somewhat complex, and making it necessary for a clear understanding that a brief history of these proceedings be given.

The Fidelity Land & Trust Company owned lands in the Counties of Williamsburg and Georgetown, possessed property of considerable value, and was heavily indebted. Various and numerous creditors, along in 1922, were pressing it for payment of their claims.

In March, 1922, the International Harvester Company of America, a foreign corporation, brought an action in the District Court of the United States for the Eastern District of South Carolina against the Fidelity Land & Trust Company for an alleged indebtedness, and on October 30, 1923, judgment was rendered by that Court in its favor in the sum of $6,250.30. On November 9, 1923, a transcript of this judgment was filed and entered in the office of the Clerk of Court of Common Pleas for Williamsburg County, and on November 12, 1923, a transcript of the judgment was likewise filed and entered in the office of the Clerk of the Court of Common Pleas for Georgetown County.

In October, 1922, the Bank of Williamsburg and Wee Nee Bank brought suit in the Court of Common Pleas for Williamsburg County against the Fidelity Land & Trust Company and the First National Bank of Florence. The

complaint alleged that the plaintiffs "were bringing this action on behalf of themselves and all other creditors of the defendant, Fidelity Land & Trust Company, who shall come in and contribute to the expense thereof." The plaintiffs asked for the appointment of a receiver to take charge of all the property and assets of the Fidelity Land & Trust Company, for an injunction to prevent creditors from instituting or prosecuting suits against the said company during the pendency of the action, and for the appointment of a Special Referee to take account of all the assets and liabilities of the said company, and to require all parties to whom the said company was indebted to file and prove their claims before the Referee. The defendant, Fidelity Land & Trust Company, answered, and joined in the prayer of the complaint. An order was duly passed by his Honor, Judge Shipp, on October 17, 1922, appointing G. S. Hemingway Receiver and S. Oliver O'Bryan Referee. This Court also, by its order, granted the injunction prayed for, with leave to the plaintiffs to apply at the foot of the order for such further orders as might be necessary to carry same into effect. This order, appointing the receiver, was passed by the Court while the suit of the International Harvester Company of America was pending in the Federal Court, but before that Court gave the judgment in favor of the Harvester Company. The summons and Complaint in this action, asking for the appointment of a receiver and for an injunction, along with a copy of the order, were served on the International Harvester Company of America on July 20, 1923, and service of same was accepted by that company. The Harvester Company filed a demurrer to the complaint in that action on the grounds: (1) That the Court of Common Pleas of Williamsburg County had no jurisdiction to enjoin the suit in the Federal Court; and (2), as the complaint did not admit the validity of the claim of the Harvester Company, no injunction would lie against the prosecution of an action to establish the claim. This demurrer was never brought to a hearing.

It appears that, upon filing of the demurrer, Messrs. Kelley & Hinds, of counsel representing the plaintiff in the injunction proceedings, wrote to counsel of the Harvester Company, stating that the injunction was not intended to affect the disposition of the case of the Harvester Company against the Fidelity Land & Trust Company pending in the Federal Court, and stating further that all parties desired to have that case disposed of in that way. This case was finished and judgment rendered on October 30, 1923.

In the meantime a number of suits had been instituted against Fidelity Land & Trust Company, in the Court of Common Pleas of Williamsburg County, by some of its creditors. In January, 1924, however, an order of the Court was taken, by consent of all interested parties, except the International Harvester Company of America, consolidating the seven suits including that in which the receiver was appointed, but not including that brought by the International Harvester Company in the Federal Court. Under an order of the Court in the consolidation of the seven causes, the property of the Fidelity Land & Trust Company was sold.

Subsequently to these proceedings, the International Harvester Company issued an execution, based on its judgment, against the property of the Fidelity Land & Trust Company. A motion was made to require the marshal to levy execution upon the property and sell same, but this motion was denied by the Federal Court, for the assigned reason that the property was under the control of a receiver appointed by the Court of Common Pleas for Williamsburg County.

An order was made in the consolidated causes appointing a Referee and directing him to take testimony and to report. He subsequently filed his report to the effect that the conveyance by the Hemingways to the Fidelity Land & Trust Company of the property which the Hemingways conveyed in payment for the capital stock of that company was valid, but that it was subject to the liens of the two judgments of

H. Kaminski & Co. and of J. W. Holliday against the partnership of W. C. Hemingway & Co. upon the land conveyed by the members of the old partnership to the Fidelity Land & Trust Company before the recovery of said judgments. The Referee also recommended that the creditors of the Fidelity Land & Trust Company be called in, and an order was made on April 3, 1924, directing that all claims against that company  be filed with the Clerk of Court of Common Pleas for Williamsburg County on or before June 9, 1924, and that claims not filed be disallowed.

Pursuant to that order, the International Harvester Company of America duly appeared before the Clerk of Court and proved its judgment recovered in the Federal Court and the filing of the transcript of the judgment in the Counties of Williamsburg and Georgetown, in November, 1923.  The Clerk of the Court reported the said claim as valid, but did not give it any priority in payment.

After this report was made, the International Harvester Company of America filed its petition in this proceeding, setting out in detail the history of proceedings had prior thereto, especially alleging and emphasizing its claim to priority in the distribution of the assets of the Fidelity Land & Trust Company, by reason of the fact, as alleged by it, that it was a judgment creditor of the said Fidelity Land & Trust Company.  By its prayer the petitioner asked the Court that such priority be fixed and decreed in the distribution of the assets of the Fidelity Land & Trust Company, and that its rank be fixed as a secured creditor.

The Hartsville Fertilizer Company, a creditor of the Fidelity Land & Trust Company, answering the petition of the International Harvester Company, denied that the alleged judgment of the company was a lien upon the property of the Fidelity Land & Trust Company.

In this form the matter came on to be heard by his Honor, Judge Henry, presiding in the Court of Common Pleas for Williamsburg County, on May 28, 1925.  Judge Henry

denied the prayer of the petitioner in an order which will be reported.

The petitioner now comes to this Court, imputing error to the Circuit Judge by six exceptions, which will also be reported.

The question raised by the appellant's exceptions is:

1    Was the judgment of the International Harvester Company of America against the Fidelity Land & Trust Company, under the facts of this case, a lien upon the real estate of the Fidelity Land & Trust Company and therefore entitled to priority in the distribution of the proceeds of the sale of the said real estate?

The receiver was appointed on October 17, 1922, in the State Court, and the Harvester Company obtained its judgment on October 30, 1923, in the Federal Court.

There can be no doubt as to the law applicable, generally, to the question of priority of a judgment secured after the appointment of a receiver. In the case of *Clinkscales v. Pendleton Manufacturing Company,* 9 S. C., 318, this Court said:

"A judgment acquired after the order appointing a receiver cannot obtain a lien on the assets, for the judgment only acts upon the property of the judgment debtor in the hands at the time it was obtained or subsequently acquired, while the control of the property had gone into the hands of the Court and out of those of the judgment debtor at that time. It is true that title to the lands upon which it is claimed that the judgment became a lien stood apparently in the name of the judgment debtor, but the Court had already obtained a power of disposition that, when fully exercised, would relate back to the time when control was assumed over the assets."

In that case, moreover, while the judgment was procured after the order appointing the receiver was passed, it was procured before the receiver gave bond and took possession of the property, but even under these circumstances the

Court held that the judgment did not create a lien upon the assets of the corporation.

In *Regenstein v. Pearlstein,* 30 S. C., 192; 8 S. E., 850, certain creditors attached property of the debtor corporation after the order appointing the receiver was passed but before the receiver had qualified by executing the required bond. The Court, citing the *Clinkscales case,* decided that the attachment should be dissolved.

These cases are in harmony with the earlier case of *Howard v. Cannon,* 11 Rich. Eq., 23; 75 Am. Dec., 736, in which it was held that a judgment creditor, which had obtained its judgment against the debtor after a deed of assignment had been made by the debtor for the benefit of creditors but before the assignee filed a bill to call in the creditors and marshal the assets of the assignor, was not entitled to levy, under its judgment, on any of the property of the assigning debtor.

But the petitioner lays emphasis upon the fact that its judgment was procured in the Federal Court, apparently with the idea that this circumstance gives the judgment some peculiar potency. The distinction, in a case of this kind, between the validity of a judgment and its lien or priority, should be kept clearly in mind.

In *Dillingham v. Anthony Russell,* 73 Tex., 47; 11 S. W., 139; 3 L. R. A., 634; 15 Am. St. Rep., 753, it is said:

"No Court can interfere with the custody of property held by another Court through a receiver, but may establish by its judgment a debt against the receivership, which must be recognized even by the Court appointing the receiver, and is not open to revision by it if the Court rendering the judgment had jurisdiction of the subject-matter and the parties. The manner in which a judgment so rendered shall be paid, and the adjustment of equities between all persons having claims on the property and effects in the hands of a receiver made must necessarily be under the control

of the Court having custody through its receiver, but this does not affect the jurisdiction of other Courts conclusively to establish by judgment the existence and extent of a claim."

In the case of *Howard v. Cannon, supra,* the judgment creditor had procured judgment in the Federal Court and that fact was made the ground of appeal to the State Supreme Court, which Court said on that point:

"We have every disposition to avoid even the appearance of conflict with the tribunals of the United States created under the Constitution, and we have no disposition to quibble between restraining processes and restraining persons from proceeding under them. But surely there is a substantial difference between undertaking to revise the judgment and procedure of a co-ordinate or even superior tribunal, and interfering to restrain parties from acts not authorized by our equals or superiors. It does not impugn, in any respect, the judgment of the Federal tribunal that we interpose to prevent parties under our control from abusing the process of that Court. It has granted a judgment against Cannon, and we make no offer to restrain the execution of their judgment from the estate of Cannon. But we do not perceive that, under a judgment against Cannon [the assigning creditor], the estate of Howard [the assignee], or any other person, can be legitimately seized and sold. The judgment of Cummings & Styron is left intact; and we simply determine that they or their agent had no authority to seize the property of a stranger under pretense of its operation."

In the *Clinkscales case,* also, the judgment creditor had obtained its judgment in the Federal Court, and priority was denied.

We cannot see that the letter of Kelley & Hinds to the Harvester Company's counsel, disavowing any intention to enjoin the prosecution of the Harvester Company's suit against the Land Company in the Federal Court, affects the situation in any way. The Harvester Company had a legal

right to proceed with the prosecution of its suit already begun in the Federal Court, and the letter of Kelley & Hinds amounted to nothing more than a recognition of that right, and could not endow the Harvester Company's judgment, when procured, with any attribute which it would not have had under the law. See 14 R. C. L., 419-421.

The appellant contends further that the call for creditors was not made in the receivership suit until after it had obtained its judgment in the Federal Court, that it was not a party to the receivership suit till it filed its claim under this call, and that therefore it is not bound by any decree of the State Court passed prior to such filing, and particularly any decree giving preferences to others.

The record does not disclose that the appellant sought or was denied a hearing, on the merits, as to any preference given to other creditors or as to any proceeding which affected its rights in any way, had prior to the time when it became a party to the suit by filing its claim with th' Referee. It appears, therefore, that, in so far as the appellant's exceptions impute error to the Circuit Court with respect to previous adjudications of liens or priorities, they are broader than would be warranted by the facts set out in the record. The only question really presented in the appellant's petition was the question of the priority of its own judgment.

Further, it is quite apparent that it may well and does happen in some cases that, at the appointment of the receiver, the time is not opportune, nor are the circumstances exigent, for making a general call for creditors. The case of *Howard v. Cannon, supra,* appears controlling on this point, since in that case, as pointed out above, creditors were not called in until after the judgment of the creditor claiming the lien had been obtained.

Moreover, it cannot be contended that it is a prerequisite, in order to make a valid appointment of a receiver, that all creditors of the debtor be first made

parties to the proceeding. Any creditor, or any person claiming a lien upon or a special right in any property in the hands of the receiver, is entitled to attack, in an appropriate proceeding, the validity of the receiver's appointment, but, if the receiver is appointed by a Court having jurisdiction of the parties and of the subject-matter, so long as he continues to serve without impeachment or discharge through proper proceeding, his acts done under authority of the Court and the proceedings of the Court in the action must be given full faith and effect. See 23 R. C. L., 44.

The Harvester Company, in the case at bar, followed the same course pursued by a judgment creditor in the *Clink-scales case,* and what the Court said in that case is applicable here:

"H. B. Claflin and others, styling themselves H. B. Claflin & Co., have intervened by petition, seeking to participate in the distribution of assets as creditors, and exhibiting a judgment recovered in the United States Court for the District of South Carolina on the 27th day of April, and claiming that such judgment is entitled to priority of payment out of such assets, having regard to an alleged lien of such judgment on the real estate of such corporation. It appears that the action in which such judgment was recovered was pending in the United States District Court at the time the present complaint was filed, but that judgment was recovered after the issuing of the injunction order and after the appointment of the receiver was complete, though before the receiver had perfected his official bond. The present question does not depend on the right of the Circuit Court to enjoin creditors as it regards suits pending in the United States Courts, as alleged by the first ground of objection urged by the petitioners, who are appellants here. The petitioners have not brought themselves into the action as parties by order and proper amendment, *so they cannot question the propriety of the orders of injunction and receivership.* They come in as petitioning creditors, claiming either in hostility to the title

of the receiver or as entitled to the benefit of the equities of the complaint." (Italics added.)

In *Regenstein v. Pearlstein, supra,* the validity of the order appointing a receiver was questioned on the ground that it was made at chambers. The Supreme Court held that the Judge had jurisdiction to make the order at chambers, and said:

"It is quite clear, therefore, that, even if there was any error in making the order, it was not of a jurisdictional character; and hence the order could not be regarded as void, but simply erroneous for some other reason. It would seem, therefore, *that until the order was ascertained to be erroneous by some proper proceeding, it was entitled to be respected and obeyed."* (Italics added.)

In the present case, although the Harvester Company was not made a party defendant at the outset, reference was made in the complaint to its claim against the Fidelity Land & Trust Company, and the summons and complaint and the order appointing the receiver were duly served upon the company. Although the company had full notice of the receivership proceedings and actually, through its counsel, attended the sale of the real estate made under order of the Court, it took no steps to attack the validity of the receiver's appointment or to make its voice heard in the determination of questions arising, in the administration of the estate, and came in and submitted its claim to the jurisdiction of the State Court only after the Federal Court had refused to enforce levy under execution on its judgment and after the State Court had issued its general call for creditors. Although it did not attack the validity of the appointment of the receiver, as it had a right to do, it now comes into Court, and, in effect, attempts to do indirectly, through exempting itself from the operation of the decrees of the State Court, what it did not attempt to do directly and in a proper proceeding. Under the circumstances it

cannot be heard to object, in the manner herein attempted, to previous proceedings in the receivership suit.

Similarly, the appellant contends that it is not bound by the proceedings in the receivership suit had prior to the time of filing its claim in accordance with the call for creditors, for the reason that the order appointing the receiver was made by consent of the parties; the appellant not being a party at that time.

What we have just said with reference to the validity of the receiver's appointment and other proceedings had in the receivership suit and the appellant's course with reference to that suit applies to this contention also.

Further, the case of *Howard v. Cannon, supra,* the proceedings involving a voluntary assignment, was for all practical purposes a consent proceeding.

The case of *In re Spragins (Mann v. Poole),* 44 S. C., 65; 21 S. E., 543, which was principally relied on by the appellant, does not support its contention. That case involved a deed of assignment made by the debtor, Poole, on May 18, 1892, for the benefit of his creditors. On June 21, 1892, the plaintiffs, on behalf of themselves and all other creditors of Poole, who should thereafter come in and seek relief under said action and contribute to the expense thereof, commenced an action to set aside the deed of assignment. On May 3, 1893, Judge Norton filed a decree setting aside the deed of assignment and appointing a receiver, who qualified on January 4, 1894. The Court divided the judgment creditors into three classes:

"(1) Those who obtained their judgments prior to the commencement of the action of *Mann v. Poole.* (2) Those who obtained their judgments after the commencement of that action, but before the decree appointing a receiver to take charge of the assets of the estate of Poole, and administer the same under the order and direction of the Court. (3) The plaintiffs' judgment obtained at the same time as

the decree appointing the receiver was made, and in the same case."

The Court held that creditors of the first class were unquestionably entitled to priority and that creditors of the third class were not entitled to priority. It was held that creditors of the second class were entitled to priority, but the Court specifically pointed out that no injunction was ever asked for or obtained, restraining creditors from suing, or prosecuting their actions already commenced. It is said in the opinion:

"It is obvious, therefore, that these creditors were offered the option, either to come in on the terms proposed or to stay out and pursue their legal rights in the ordinary way, from which there was nothing to forbid them; and, having adopted the latter alternative, it is difficult to conceive any good reason why they should be deprived of any advantage which they may have legally obtained."

The Court referred to the opinion in the case of *Gracey v. Davis,* 3 Strob. Eq., 55; 51 Am. Dec., 663, quoting therefrom as follows:

"The effect of setting aside the deeds is to leave the creditors to enforce their claims and obtain satisfaction according to their legal priorities; or, if this Court takes charge of the fund, to direct them to be paid according to their legal rank."

It will be observed that the decision is based upon the fact that no injunction restraining creditors from prosecuting suits was obtained and upon the effect, as to the legal priorities, of setting aside a deed.

It will be further observed that the judgment creditors in that case obtained their judgments before the receiver was appointed. In the present case the Harvester Company did not obtain its judgment until after the order of injunction was passed and the receiver appointed.

Under our view of the whole case as herein expressed, it is not necessary to consider the question of estoppel raised by the appellant's third exception.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, COTHRAN and BLEASE concur.